## Davidson et ux., Appellants, *v.* Upland Borough.

Argued October 7, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Paul C. Van Dyke,* with him *Cochrane & Van Dyke,* for appellants.

*Robert W. Beatty,* with him *Butler, Beatty, Greer & Johnson,* for appellee, Borough of Upland.

*Edward S. Lawhorne,* for appellee, Delaware County Housing Authority.

OPINION BY HIRT, J., November 12, 1957:

Upland Terrace is a housing project in the Borough of Upland, under the management of Delaware County Housing Authority. The plaintiffs contemplated moving from one dwelling house in the project to another. For the purpose of inspection the wife-plaintiff, on application to the office of the management, was given a key to a house identified as 307 Lane C which recently had been vacated by the former tenant. Concrete steps provide the only means of access to the front door of the house. This plaintiff testified that in mid-afternoon of January 18, 1955, a bright, clear dry day, she went to the premises and as she approached she "noticed there was quite a bit of trash around the house, and the

steps were covered with old, dirty brown newspapers . . . " She testified: "I noticed a couple of brown paper bags [on one side of the steps]; on the other side I noticed a broken wheel, a little broken wheel . . . and . . . newspapers were scattered all around the steps"; and further; "noticing these things on the steps, I gingerly walked up these steps, picking my way through the trash, and opened the screen door and then unlocked the main door with the key . . ." There is a concrete platform in front of the doorway from which two steps lead down to a walk paved with slate slabs. This walk is only a few feet in length and extends to the top of the main flight of six concrete steps which provides access from the street. This plaintiff was inside the house for less than a half-hour and on leaving after taking one step she slipped and fell to a slate slab at the bottom of the two upper steps of the stairway and was injured. In the actions the jury found for her in the sum of $5,000 and for the husband-plaintiff in the sum of $2,000, against both defendants. The court en banc however, subsequently entered judgment for the defendants n.o.v. in both actions. These appeals are from that order.

In the lower court the question of the wife's contributory negligence was neither raised nor considered. And the only testimony in the case bearing upon the question of negligence of the defendants was that of the wife-plaintiff herself. Specifically, proof of negligence must rest if at all on the following excerpts from her testimony: ". . . while I was turning around [after closing the screen door on leaving the premises] I felt my left foot slipping from under me." Referring to the slate walk, to which she fell, she stated: ". . . I was in a half-sitting position; and I noticed that on the back of my shoe [on the heel] there was a wet, slippery orange peel"; and to the question: "How large was that?" she

said: "Oh, I would say it was not any bigger than a dime." In concluding her testimony on the subject of the defendants' negligence she said that, from her sitting position on the walk, she observed a skid mark on the top step "about five or six inches long."

There was credible testimony of disinterested witnesses that there was no litter of any kind on or near the steps and in a statement which the wife signed, she had stated: "I do not know why I fell nor do I know what caused me to fall." We nevertheless may not substitute our judgment, as to where the truth lies, for that of the jury (*Gaita v. Pamula,* 385 Pa. 171, 175, 122 A. 2d 63) ; and in the light of the verdicts we must accept the plaintiffs' testimony as verity and give them the benefit of every favorable inference from it.

The wife was a business visitor to whom, as such, the defendants owed the duty to maintain the premises in a reasonably safe condition "for the contemplated uses thereof and the purposes for which the invitation was extended": *Vetter v. Great A. & P. Tea Co.,* 322 Pa. 449, 185 A. 613. The Restatement of the Law of Torts, under the title Special Liability of Possessors of Land to Business Visitors sets up under §343 the following standard of care: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them . . . " Cf. *Gallagher v. Children's Aid Society,* 344 Pa. 152, 23 A. 2d 452.

The only testimony of the presence of refuse or newspapers on the steps, as we have noted, came from the appellant-wife, herself. There is nothing whatever in her testimony or of any other witness as to how long the litter had been there nor where it had come from;

and there is no testimony from which it may be inferred that either of these defendants had notice of the condition of the steps, either actual or constructive. The wife-plaintiff stated definitely that she didn't know how long the newspapers had been there and she didn't observe the orange peel on the concrete either in going into the house or on leaving it. In *Gorman et ux. v. Brahm's Sons, Inc.,* 298 Pa. 142, 148 A. 40, under somewhat similar circumstances, it is said: "It was necessary for plaintiffs to prove, therefore, that the [offending substance] had remained upon the steps long enough to charge defendant with constructive notice of its presence; or that it was not a mere chance occurrence . . ." The presence of litter on the steps must be conceded but from that fact alone, without additional and definite proof, actual or constructive notice to the owners of the condition may not be inferred. In *Franz v. Peccalaio,* 356 Pa. 494, 52 A. 2d 177, the woman-plaintiff was walking on the sidewalk passing a fruit and vegetable store. At that time there was no display of vegetables in front of the store but under the windows near the building there was an accumulation of radish tops and other vegetable wastes. While passing this store, the plaintiff slipped, and after the accident discovered a green bean adhering to the heel of her right shoe. She testified however that she did not know how she came to lose her footing. In that situation (much more favorable to recovery than the present case) the Supreme Court said: "A jury may not *infer* that the bean found on the heel caused appellant to slip. It may not *assume* that the bean had formed part of the refuse under the windows. *It cannot be surmised that the bean had remained on the sidewalk for such length of time that appellee had had constructive notice of its presence.*" (Emphasis in part, added). To the same effect, that res ipsa loquitur does not apply and that there must be proof as to the

length of time the offending condition had been present, are *Lanni v. Pa. R. R. Co.*, 371 Pa. 106, 86 A. 2d 887; *MacDonald v. Gimbel Brothers, Inc.*, 321 Pa. 25, 183 A. 804; *Gorman et ux. v. Brahm's Sons, Inc.*, supra; *Bell v. Great A. & P. Tea Co.*, 288 Pa. 160, 135 A. 607.

The two cases upon which plaintiffs lean heavily are readily distinguishable. In *Jerominski v. Fowler, Dick & Walker*, 372 Pa. 291, 93 A. 2d 433 the plaintiff fell on a stairway in the defendant's department store. She testified that her foot came in contact with an oily or greasy substance on the stair which caused her to slip and fall. The distinguishing situation in that case is the fact that there was positive testimony by an eyewitness to the effect that the greasy substance had been on the step on this department store stairway for a period of two hours and fifteen minutes before plaintiff fell, thus giving adequate notice to the defendant of its presence—all of which is lacking in the present case, In *Branch v. Phila. Trans. Co.*, 374 Pa. 60, 96 A. 2d 860, plaintiff fell when she slipped on a banana peel on a subway platform of the defendant company while in the act of boarding a railway car. There was positive evidence that an accumulation of trash, including the banana peel, had been on the platform for 25 minutes before plaintiff's injury where it must have been seen by motormen, or other employees of the railway company whose duty it was to remove it. But that case involved a common carrier's subway platform with a high rate of usage under constant supervision of defendant. Accordingly under those circumstances the Supreme Court in setting aside the compulsory nonsuit concluded that it was for the jury to determine whether the defendant was charged with notice of the dangerous condition.

These cases, clearly, were properly disposed of in the lower court.

Judgments affirmed.

RHODES, P. J., dissents.