Reading Motor Sales, Inc., Appellant, *v.* United States Fidelity and Guaranty Company.

Argued April 28, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Hillel S. Levinson,* for appellant.

*Robert I. Cottom,* with him *Matten and Cottom,* for appellee.

OPINION BY MR. JUSTICE JONES, July 2, 1970:

On April 19, 1965, Emmett Lien, together with several persons, including his brother-in-law, entered the business premises of Reading Motor Sales, Inc. (Reading) for the purpose of purchasing an automobile. While on the premises, Lien, his brother-in-law and one Harry Kochel, a Reading salesman, were ascending a stairway from the second to the third floor when the handrailing tore loose and a fire extinguisher fell off the wall striking Lien on the head and tearing a hole in the brother-in-law's trousers. The fire extinguisher, about 2 feet long, weighed approximately 30 pounds. While the blow from the fire extinguisher raised a lump on Lien's head and caused a headache, there was no visible bleeding. The three persons present at the time of the accident notified Mark Watts, Reading's manager, of the accident and Watts told Lien to see a doctor, to have X-rays taken and to send the bill to Reading since Reading was insured. Watts also told Lien's brother-in-law to secure a new pair of trousers for which Reading would pay.

The next day, Lien went to see a Dr. Norman Winston. Dr. Winston examined Lien's head, took X-rays, and mailed his bill for services to Reading, said bill being directed to Watts' attention. This bill was received, apparently in the early part of May, 1965, by Watts

who, in turn, gave it to one Charles Ely, Reading's office manager, with directions to forward the bill to Reading's insurance carrier, United States Fidelity and Guaranty Company (Fidelity). This bill remained on Ely's desk for the next three and one-half months. On July 17, 1965, additional X-rays were taken of Lien by Dr. Winston and, his first bill not having been paid, Dr. Winston sent a bill covering both office visits, treatment and X-rays directly to Lien who hand delivered this bill to Reading. Again, this bill was not forwarded to Fidelity.

In the meantime, Lien's physical condition had deteriorated to such an extent that on August 10, 1965, he underwent surgery for the repair of a ruptured disc which had been caused by the accident. On August 19, 1965, Lien's counsel notified Reading that he was representing Lien and he requested that Reading notify its insurance company of his representations. On August 25, 1965, Fidelity was finally given its first notification of the accident and of the subsequent events and by letter dated August 26, 1965, Fidelity notified Reading of its intent to deny coverage on the ground that Reading had failed to give timely notice of the accident and the insurance claim.

Lien instituted a trespass action in the Court of Common Pleas of Berks County against Reading. Reading, as a result of this action and a finding of liability against it, paid $12,322.44 to Lien.

Reading then instituted an assumpsit action in the Court of Common Pleas of Berks County against Fidelity to recover the amount which it had paid to Lien on the theory that Fidelity's insurance policy covered Reading's loss. The insurance carrier denied coverage under the policy because of the failure of its insured, Reading, to give timely notice of the accident.*

---

* The pertinent provision of the Reading-Fidelity insurance contract reads as follows: "Notice of Accident: When an accident

After a trial before a court and jury, the jury returned a verdict against Reading and in favor of Fidelity. After denial of motions for judgment n.o.v. and for a new trial, judgment on the verdict was entered in the court below and the instant appeal was taken.

The question before the jury in the court below was whether, under all the circumstances, Reading had delayed unreasonably in giving notice of the accident to Fidelity.

On this appeal the propriety of certain portions of the trial court's instructions to the jury is challenged. However, in our reading of these instructions *in their entirety,* we ascertain the presence of no prejudicial error. See: *Sherman v. Manufacturers Light and Heat Co.,* 389 Pa. 61, 67, 132 A. 2d 255, 258-59 (1957) wherein we held that error in a charge cannot be predicated upon isolated excerpts from the charge if, when the entire charge is examined, it is revealed that a true and correct charge was given.

In its charge, *inter alia,* the trial court expressed to the jury its view that the opinions of the appellate courts in Pennsylvania were none too clear as to just what constituted reasonable and timely notice to the insurer under a general liability insurance contract. From this statement of the court Reading would have us draw the conclusion that the jurors were, in effect, permitted to make up their own law on the subject. If such a conclusion could be drawn, Reading's objection

---

occurs written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses." Such a contract requirement will be strictly enforced: *Hachmeister, Inc. v. Employers Mutl. Liability Ins. Co.,* 403 Pa. 430, 169 A. 2d 769 (1961). See also: *Bartels Brewing Co. v. Employers Indemnity Company,* 251 Pa. 63, 95 A. 919 (1915).

to this portion of the charge would certainly be well founded. See: *O'Toole v. Braddock Borough,* 397 Pa. 562, 565, 155 A. 2d 848 (1959). However, Reading fails to note that the trial court fully clarified its instruction in this respect when it stated: "Nevertheless, under the duties imposed upon me, I must interpret those opinions [opinions of the appellate court] and now tell you what I think the law is relative to this subject, and you must be bound by that law as I give it to you." It is obvious that the court did not permit the jury to make up its own mind as to the law. What Reading does is to extract a small portion of the instructions from the whole instructions and ignore the instruction which immediately followed the allegedly improper instruction. We find no merit in Reading's position in this respect.

Again, on numerous occasions in its charge, the trial court referred to "extenuating circumstances" and "due diligence". Reading now contends that these phrases were not defined by the court and the failure to so define these phrases constituted prejudicial error. The court was not requested by Reading to clarify or explain these phrases. Reading cannot now be heard to object to that to which it should have objected in the court below and to which it should have directed the court's attention during the trial. See: *James v. Ferguson,* 401 Pa. 92, 97, 162 A. 2d 690 (1960). The phrases used by the court were not of technical nature or of such character as to have unusual legal as contrasted with ordinary meaning. This objection lacks merit.

Reading next urges that the court erred in that portion of its charge wherein it attempted to point out and delineate the factors which the jury might use in determining whether four months delay in giving notice of the accident was untimely and unreasonable. Reading takes the position that this portion of the charge was, in effect, a statement by the court that the

delay was unreasonable and, therefore, inexcusable. Our examination of the portion of the charge to which this objection is made fails to reveal any basis for the conclusion of error which Reading would draw. Once again, Reading has taken an isolated portion of the charge and ignored the effect and language of the charge in its entirety. The trial court clearly emphasized that it was simply listing possible aspects of the problem which the jury might take into consideration in arriving at its determination. Having discussed several possibilities, the trial court then stated to the jury: "And that's the job that is being given to you in this case, whether under the law, which requires notice to be given within a reasonable time, whether under the facts of this case notice was given to this defendant within a reasonable time after this bump on the head occurred." Our scrutiny of the court's charge indicates that the question of whether the delay in giving notice was reasonable was clearly and exclusively left to the jury to decide.

Reading next submits that the trial court erred in refusing to affirm and read certain points for charge requested by it. These points are as follows: "1. That knowledge of the occurrence of the accident for purposes of the notice requirement to an insurance company is not sufficient to require said notice until the insured has actual knowledge of the fact that there has been an injury. 2. Where the insured has no knowledge of obvious, apparent and substantial injuries, notice is not required until the insured has such knowledge. 3. Lack of knowledge of substantial, obvious and apparent injuries is equivalent to lack of knowledge of an accident." Reading had also submitted other points for charge which the court did affirm and read to the jury. These points were as follows: "5. A fair businesslike and common sense interpretation of an insurance policy could not require notice of every

accident. 6. Lack of knowledge of any substantial injuries is equivalent under the law of Pennsylvania to lack of knowledge of the accident for purposes of notice requirements in insurance contracts."

We believe that the subject matter of the three points refused by the court below was adequately covered by the court's affirmation of the two points which it did affirm and read to the jury.

Lastly, Reading objects to that portion of the charge wherein the court, in reviewing the testimony, stated that Reading's office manager, Mr. Ely, had received Dr. Winston's first bill "early in May". Our reading of the record finds ample support for this statement. Moreover, following the disposition of counsel's exceptions to the charge, the court made a long and clear statement to the jury in which it reiterated that the jury was to determine the factual issues independently of anything that might have been said by counsel or by the court in their or its recollection of the facts. Having emphasized that the jurors alone were to decide the facts, based upon *their own* recollections of the testimony, the trial court did not commit prejudicial error even if it were incorrect in its recollection of the fact. *E.g., Luterman v. Philadelphia,* 396 Pa. 301, 152 A. 2d 464 (1959) ; *Thomas v. Mills,* 388 Pa. 353, 130 A. 2d 489 (1957).

We have examined with care the instant record, including the court's instructions to the jury in their entirety, and we are of the view that the court clearly, adequately and fairly presented this case to the jury for its determination and we ascertain no reversible error. See: *Smith v. Clark,* 411 Pa. 142, 190 A. 2d 441 (1963).

Judgment affirmed.