508 A.2d 580

**Earl W. TRENT, Jr., Appellee,**

**v.**

**Bruce TROTMAN, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 31, 1985.

Filed May 2, 1986.

492

494

Allan H. Star, Philadelphia, for appellant.

Robert J. Spiegel, Philadelphia, for appellee.

Before CIRILLO, TAMILIA and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Plaintiff-Appellee, Earl Trent, instituted the instant medical malpractice action against Defendant-Appellant Bruce Trotman, M.D., seeking damages for various problems experienced by the Appellee subsequent to surgical care by the Appellant. The case was tried before a jury, which rendered a verdict for Mr. Trent in the amount of $230,053.30. Timely motions for a judgment n.o.v. and for a new trial were filed by the Appellant, and were thereafter denied by order of the lower court, and judgment was entered for the Appellee on the verdict. The instant appeal followed.

The record shows that in December, 1977, the Plaintiff experienced pain in his lower abdomen. After various diagnostic tests and an examination, Dr. Trotman advised him that two polyps had been found in his colon. The Defendant advised the Plaintiff that a surgical procedure known as a polypectomy would have to be performed. In this procedure, a surgical instrument known as a colonoscope is inserted through the rectum of the patient and to the sigmoid colon. A wire snare device is used in connection with the colonoscope, and the snare is looped around the polyp and mechanically tightened while electrical energy is applied to coagulate the tissue.

The operation was scheduled and performed in the endoscopy suite attached to the Appellant's office at the Hospital

of the University of Pennsylvania on January 19, 1978. During the course of the surgery, the snare broke, and a substitute snare had to be obtained from another nearby hospital. During the time that the substitute snare was being obtained, the colonoscope was retained in place inside the Plaintiff. After the second snare was obtained, the surgical procedure was completed.

The Plaintiff returned home after the surgery, but experienced several problems. Following a number of conversations between the Plaintiff and the Defendant that day, and the next morning, the Plaintiff was readmitted to the Hospital of the University of Pennsylvania on January 20, 1977, and was diagnosed as having a perforated sigmoid colon, and other related medical problems. Following five days of intravenous treatment with antibiotics, the Plaintiff was again subjected to surgery and the perforation in his colon was repaired. As a result of the surgery, a colostomy was required.

The Plaintiff was discharged from the hospital over one month later, but had a readmission nine days thereafter, when his intestine began protruding from the colostomy hole. That problem was remedied by further care at the time of that subsequent admission.

At trial, there was no dispute that the perforation in the Plaintiff's sigmoid colon was thermal in origin, and had been caused by heat produced from the snare. The Plaintiff produced expert testimony, discussed in relevant detail below, in an attempt to establish that in several regards, the procedure followed by the Defendant physician departed from accepted reasonable medical standards and practices. As would be expected, the Defendant, and another physician produced as an expert, testified that the procedures employed were proper, did not contribute to the Plaintiff's problems, and did not involve any negligence. As noted above, the jury returned a verdict in favor of the Plaintiff-Appellee in the amount of $230,053.30. The Defendant-Appellant has raised several claims of error on appeal.

In this case we are requested to reverse the lower court's denials of motions for judgment notwithstanding the verdict, and/or for a new trial. In such an appeal, we must be mindful of the standard of review applicable with regard to the lower court's denial of such motions. In reviewing the denial of a motion for judgment n.o.v., the sole duty of the appellate court is to decide whether there was sufficient competent evidence to sustain the verdict, viewing all of the evidence in the light most favorable to the verdict-winner, including all reasonable inferences arising from the evidence, and any conflicts in evidence must be resolved in favor of the verdict winner. See *McDevitt v. Terminal Warehouse Co.*, 304 Pa.Super. 438, 450 A.2d 991 (1982). Where the denial of a motion for new trial is challenged on appeal, we must examine the evidence and determine whether or not the trial court manifestly or capriciously abused its discretion or committed an error of law. *Lokay v. Lehigh Valley Cooperative Farmers, Inc.*, 342 Pa.Super. 89, 492 A.2d 405 (1985). With these concepts in mind, we shall examine the Appellant's contentions of error.

■ The Appellant first asserts that the trial judge erred in several regards in his charge to the jury. Inter alia, the Appellant claims that the trial judge improperly advised the jurors regarding the so-called "two schools of thought doctrine". This doctrine has been discussed in *Furey v. Thomas Jefferson University Hospital*, 325 Pa.Super. 212, 472 A.2d 1083 (1984) and *Remley v. Plummer*, 79 Pa.Super. 117 (1922), cases which were cited in the briefs filed by both parties to the instant appeal. The two schools of thought doctrine basically provides that it is improper for a jury to be assigned to decide which of two schools of thought as to proper surgical or other medical procedure should have been followed in any particular case, when both schools have their respective and respected advocates and followers in the medical profession. In essence, a lay jury is not to be put in a position of choosing one respected body of medical opinion over another, when each has a reasonable following among the members of the medical community. Under this

doctrine, a physician will not be held liable merely for exercising his judgment in applying a course of treatment supported by a reputable and respected body of medical experts, even if another body of expert medical opinion would favor a different course of treatment.

■ The two schools of thought doctrine is applicable in the instant case with regard to the question presented to the jury of whether or not it was proper for Dr. Trotman to treat Mr. Trent's problem conservatively with medication for five days following the initial surgery, before the subsequent repair surgery was undertaken. The Plaintiff's expert testified that immediate surgery was in order, according to the mainstream of respected medical opinion. The Defendant's expert testified that there were two schools of thought on the matter, and that the majority school of thought was for conservative management of the problem, rather than surgery, at the time when the Plaintiff's problem arose. The trial judge charged the jury as follows, concerning the two schools of thought doctrine:

> Now, ladies and gentlemen, a physician has the right to practice his profession in accordance with the school of thought which differs in its concepts and procedures from another school of thought. Even though the school that he follows is a minority one, he will not be deemed to be negligent or practicing improperly as long as that school of thought is reputable and respected by reasonable medical experts.

Although a less abbreviated explanation of the doctrine would have been more desirable, we find that this instruction properly summarized the applicable rule for the jury.

■ The Appellant, however, contends that the trial judge made remarks and comments on the evidence which gave the jury the impression that a choice must be made between the correct medical approach that should have been utilized. We cannot agree with such an assertion. Further, we cannot ignore the following additional comments of the trial judge to the jury, during its charge, when it reviewed the testimony of the Defendant's expert: "And he testified that

there are two schools of thought, one conservative, which does not believe in immediate surgery, but treatment by antibiotics, observation, and things of that nature. And there was another, I guess you would call it a more radical view, that believed in surgery, in immediate surgery." This additional comment further enlightened the jury regarding the existence of two reasonable and respected bodies of medical opinion concerning the proper treatment approach, and reminded the jury of the Defendant's expert testimony concerning the alternative approaches taken by physicians in the medical circumstances presented in this case.

In his arguments regarding the trial court's charge concerning the two schools of thought doctrine, the Appellant further maintains that the trial judge ignored pertinent testimony offered by the defense, while highlighting the Plaintiff's expert testimony. Reading the charge as a whole, as is required, [See *Reading Motor Sales, Inc. v. United States Fidelity and Guaranty Company*, 439 Pa. 149, 266 A.2d 687 (1970)], we find no merit in such a claim. Moreover, as will be more fully discussed later in this Opinion, it must be recognized that the trial court stated on several occasions, during the charge, that the jurors were to rely upon their own recollections of the testimony and other evidence, rather than upon the trial judge's recollection and description of such testimony and evidence in his charge. In summary, we can discern no error by the lower court in its charge with regard to the two schools of thought doctrine, and the proper approach to be taken by the jury in its consideration of the fact that testimony was presented concerning two alternative treatment strategies which may have been followed by the Defendant in this case.

Next, the Appellant continues to attack the trial judge's charge by claiming that error occurred when the judge failed to properly advise the jurors that they could consider the fact that the Defendant relied upon the recommendations of a specialist with respect to the areas of treatment which were outside of the Defendant's specialty. The record shows that Dr. Trotman testified that he readmitted

the Plaintiff a day after the polypectomy, and consulted with another surgeon, Dr. John Thomas, concerning the recommended treatment of the suspected perforated colon. The evidence indicated that Dr. Trotman had never prior to that time treated or had any experience with a perforation of the colon from the type of procedure which had been followed in Mr. Trent's surgery. Dr. Thomas recommended conservative treatment and Dr. Trotman relied upon that recommendation for the next five days.

In his charge, the trial judge stated to the jury that there had been testimony from Dr. Trotman that he had consulted with a rectal/colon surgeon when he saw that the polypectomy was not going as planned. After the court's initial charge, there was a discussion in chambers with counsel concerning this subject, and thereafter the court further advised the jury:

> Now, it has been testified to that Dr. Trotman called Dr. Thomas in for consultation, which is proper, and I don't know how you will look at the advice that—or counsel was given by Dr. Thomas to Dr. Trotman, but by taking Dr. Thomas' advice, irrespective of how you view that advice, if you find that Dr. Trotman was negligent, whether he was relying on it or not relying on it, the fact that he took certain advice would not excuse his negligence. Is that clear? Or, stated another way, if you find that Dr. Thomas, in recommending, during the course of this consultation, conservative treatment, and that conservative treatment, based upon all the evidence, was improper, Dr. Trotman is not excused because he took the advice of Dr. Thomas in giving conservative treatment.

The Defendant-Appellant maintains that the jury may have been left with the impression, based upon this part of the charge, that the fact that Dr. Trotman called upon Dr. Thomas for consultation was irrelevant to the determination of Dr. Trotman's negligence. The Appellant further contends that it is the law of Pennsylvania that consultation between a general practitioner and a specialist may be evidence of due care on the part of the general practitioner,

but it does not conclusively establish due care. In support of his position on this point, the Appellant cites *Jones v. Montefiore Hospital*, 275 Pa.Super. 422, 418 A.2d 1361 (1980), reversed on other grounds, 494 Pa. 410, 431 A.2d 920 (1981).

█ We deem it unnecessary to comment on the Appellant's assertions regarding the law in our Commonwealth concerning the effect of a consultation between a general practitioner and a specialist. Rather, it will suffice that we note our disagreement with the Appellant's assertion that the trial judge erred in failing to charge the jurors that they could consider the fact that the Defendant relied upon the recommendations of Dr. Thomas with respect to the areas of treatment outside of the Appellant's specialty. We believe that the charge correctly informed the jurors that the proper issue to be resolved in the case was whether or not Dr. Trotman had departed from reasonable medical standards in the care he furnished to Mr. Trent in the circumstances presented. The charge did not preclude the jury from considering the fact that Dr. Trotman obviously exercised some care in seeking a consultation with an expert when problems become apparent. However, the lower court correctly instructed that whether or not such expert advice was taken would not provide any legal excuse for negligence by the Defendant. Accordingly, we reject the Appellant's assertion that the lower court erred in that regard in its charge.

█ Finally, with respect to the lower court's charge, the Appellant maintains generally that the trial court committed various other reversible errors in its instructions to the jury. More specifically, it is urged that the trial judge misled and unfairly prejudiced the minds of the jurors in calling their attention to alleged discrepancies in testimony, and in commenting upon other testimony and evidence. Further, the Defendant claims that the trial judge improperly charged the jury on damages, on the life expectancy of the Plaintiff, on the issue of an increased risk of harm, and on other matters.

In response to such assertions, we have carefully reviewed the charge in its entirety. In doing so, we find particularly noteworthy the trial judge's repeated instruction to the jurors to consider their own recollections of the testimony and evidence presented, rather than the summary of such matters by the judge himself. In general, our review leaves us with the firm conclusion that the charge of the court was not prejudicial to the defense and did not provide a basis, on any of the grounds asserted by the Appellant, for the grant of a judgment n.o.v., and/or a new trial.

Next, we address a contention by the Appellant that the trial court erred in allowing an expert for the Plaintiff to testify beyond the scope of answers to interrogatories. The record shows that during the pretrial stage of the case, the Plaintiff served interrogatories seeking information concerning the expert testimony which might be expected in the Plaintiff's case at trial. The Plaintiff responded to such interrogatories well over two years prior to the trial, identifying a Dr. Rosenberg as his expert, and listing various factual areas of testimony which could be expected from Dr. Rosenberg. Further, the answers listed ten opinions that this expert could be expected to render in his testimony. The Defendant did not file any supplemental interrogatories, seek a more detailed response, and never sought to take the deposition of Dr. Rosenberg prior to trial. However, during the course of the trial, counsel for the Defendant objected to the testimony of Dr. Rosenberg, claiming that the answers to interrogatories did not mention that the expert would testify regarding "causation".

We find the Defendant's position regarding this issue to be devoid of arguable merit. The Plaintiff's answers to interrogatories indicated that Dr. Rosenberg's testimony would include his opinions, inter alia, that: adequate support staff was not present at the surgery; there was insufficient equipment in the event of malfunction; inadequate pre-operative preparation took place; there were improper measurements of the polyps; the equipment used

was questionable; excessive current was used; the Defendant failed to determine the location of a second polyp; that Plaintiff should have been admitted to the hospital upon his first complaints of distress shortly after the operation; that Plaintiff should have been admitted to the hospital or examined upon his second complaint of post-operative distress; and that Plaintiff should have had abdominal surgery performed immediately upon the diagnosis of particular problems in his abdomen.

■ Rule 4003.5 of the Pennsylvania Rules of Civil Procedure is pertinent. It pertains to the discovery of information regarding experts and expert testimony during the pre-trial stage of a civil case such as the instant one. In subsection (c) it provides that to the extent that the facts known or opinions held by an expert have been developed in discovery proceedings, the testimony of the expert at trial "... may not be inconsistent with or go beyond the *fair scope* of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory...." (emphasis added) While the word "causation" was not specifically mentioned in the interrogatories completed by the Plaintiff regarding Dr. Rosenberg's expected testimony, it is certainly clear that his testimony concerning causation, challenged by the Appellant, was within the "fair scope" of the answers to interrogatories provided by the Plaintiff prior to trial.

■ The relevant inquiry in any case involving the interpretation of Rule 4003.5, such as this, is whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert, based upon any alleged deviation between the matters disclosed during discovery, and the testimony of such expert at trial. See *Augustine v. Delgado,* 332 Pa.Super. 194, 481 A.2d 319 (1984). Based upon the disclosures by the Plaintiff in response to the pre-trial interrogatories concerning his expected expert testimony, we cannot hold that the Defendant could possibly have been surprised that Dr. Rosenberg expressed an opinion concerning causation at trial. More-

over, we also cannot determine that the Appellant was prejudiced when we compare the substance of Dr. Rosenberg's testimony at trial with the information provided to the Appellant prior to trial in the Appellee's answers to interrogatories concerning such expected testimony. See and compare the situation in *Starr v. Allegheny General Hospital,* 305 Pa.Super. 215, 451 A.2d 499 (1982), where a similar issue was presented, under a local pretrial discovery rule analogous to Pa.R.C.P. 4003.5. Accordingly, we must reject the Appellant's contention that the lower court incorrectly denied him relief in the nature of judgment n.o.v., or a new trial because of the testimony on causation by Dr. Rosenberg at trial.

The Appellant next argues that the trial court erred in allowing Plaintiff's expert to testify that Defendant's negligence increased the risk of harm, and incorrectly charged the jury on the doctrine of increased risk of harm, as the Plaintiff's Complaint allegedly did not adequately plead such a theory of recovery. The record shows that Dr. Rosenberg testified that Dr. Trotman's five day delay in undertaking the surgery to repair the perforation of the colon increased the risk of harm to the Plaintiff. In support of this argument, the Appellant cites *DeJesus v. Liberty Mutual Insurance Company,* 423 Pa. 198, 223 A.2d 849 (1966) and other cases.

The lower court found no adequate grounds to support this contention by the Defendant, and we must agree. In his Complaint, the Plaintiff recited the history of his care by the Defendant, and stated that after the original injury, he underwent surgery in connection with the perforation of his sigmoid colon, and further was subjected to a colostomy. He averred that he suffered injuries as a result of the Defendant's negligence, and delineated numerous specific acts of negligence including: "improper post-operative care and treatment" and "failure to attend and treat plaintiff." While we certainly recognize the necessity that there not be a material deviation between the allegata and the subsequent proof at trial, we believe that the quoted

sections of the Complaint fairly encompass the increased risk of harm theory presented at trial in support of the Plaintiff's case. Moreover, as noted earlier in this Opinion, the answers to interrogatories submitted by the Plaintiff prior to trial provided notice to the Defendant that Dr. Rosenberg could be expected to express the opinion that the Defendant was negligent in not providing immediate care to the Plaintiff upon his first and second complaints of post-operative difficulties, and also that the Defendant was negligent in not performing surgery immediately upon the diagnosis of free air in the Plaintiff's abdomen. In view of our conclusion that there was sufficient detail alleged in the Complaint to notify the Defendant of the allegations of post-operative negligence, and also in view of the responses to interrogatories which were submitted over two years prior to the trial in this case, we find no basis for granting relief to the Defendant on his claim that the lower court erred in allowing the Plaintiff's expert to testify that Defendant's negligence increased the risk of harm, or in allowing the jury to consider a theory of recovery for the Plaintiff based thereon.

We next turn to an argument by the Appellant that the trial court allegedly erred in allowing the Plaintiff's attorney to cross-examine a defense expert concerning a textbook published in 1982, when the standard of care relevant to this case was that which existed at the time of the Defendant's treatment of the Plaintiff in 1978. The Defendant contends that the use of the 1982 textbook was a clear attempt by the Plaintiff's attorney to get a text into evidence which would have been otherwise excluded as irrelevant and inadmissible. The Defendant's argument suggests that the Plaintiff was trying to inject a different standard of care into the jurors' considerations in the case, and maintains that the court therefore committed clear prejudicial error in failing to preclude such evidence.

In raising this argument, the Defendant has significantly mischaracterized the circumstances under which the textbook in question was used at trial in this case. The

record shows that the Defendant's expert, Dr. Marx, was questioned by Plaintiff's counsel on the proper preparation of a patient for a colonoscopic polypectomy. Dr. Marx admitted that he had himself written that "high colonic irrigation with physiological saline administered three hours prior to the examination completes the preparation." However, he thereafter testified that the recommended preparation steps had changed since then. During the continuing cross-examination of Dr. Marx, the Plaintiff's counsel referred him to a 1982 text by one Dr. Shinya, who Dr. Marx admitted was "the father" of the colonoscope polypectomy procedure. Counsel for Plaintiff clearly used the text of Dr. Shinya in an attempt to show that the recommended standard preparation procedure had not changed. Such questioning was unquestionably directed to impeaching the testimony of Dr. Marx on the issue of whether or not the recommended preparation steps had changed since 1973, as he had testified. No attempt by Plaintiff's counsel to inject a 1982 rather than 1978 standard of care into the case is apparent. Accordingly, we find no error by the lower court in allowing the attorney for the Plaintiff to use the 1982 textbook for the clear and limited purposes of impeachment during the trial.

The Appellant next urges that the lower court committed reversible error in allowing the Plaintiff's expert, Dr. Rosenberg, to answer hypothetical questions. The Appellant suggests that the hypothetical questions did not fairly incorporate all material facts necessary in order to allow the witness to render an opinion, and further, it is asserted that Dr. Rosenberg assumed additional facts in answering such questions. In this regard, the Defendant specifically refers to Dr. Rosenberg's testimony that the perforation of the Plaintiff's colon was caused by heating which occurred during the removal of the polyp.

It is well-established that all information contained in any hypothetical question to a witness must be based upon evidence of record in the case. *Ranieli v. Mutual Life Insurance Company of America,* 271 Pa.Super. 261, 413 A.2d 396 (1979). In the instant case, Dr. Rosenberg

based the testimony in question upon hospital records including the pathology report and the operative report, which were a part of the record in the case. The record also shows that defense counsel was given a significant opportunity to cross-examine the Plaintiff's expert on the basis for the opinions which were rendered. In particular, he was able to show through such cross-examination that one aspect of Dr. Rosenberg's testimony was apparently based upon some record which the doctor could not locate or identify. The doctor was only able to testify that he thought he had read about such matters at some time prior to trial. Certainly, such cross-examination was quite effective and beneficial to the defense in mitigating the impact of Dr. Rosenberg's opinion on that point. In light of all of the factors present, we cannot determine that the lower court committed reversible error in allowing the witness to answer the hypothetical questions posed to him, nor can we conclude that the answers of the expert were based on any matters outside of the record in such a way that created any realistic prejudice to the Defendant. The skillful cross-examination by defense counsel in this context clearly mitigated against any such prejudice. Accordingly, we must reject this claim of error by the Appellant.

The Appellant also alleges that the verdict was so excessive as to require a new trial. The grant or refusal of a new trial in response to the argument that the amount of the verdict was excessive is within the discretion of the trial court, whose exercise thereof is not subject to reversal except when there is a clear abuse of that discretion. *Bascelli v. Randy, Inc.,* 339 Pa.Super. 254, 488 A.2d 1110 (1985). While a new trial may be granted because of the excessiveness of a verdict, we may not lightly disregard the jury's award, unless it appears that the amount of the award resulted from caprice, prejudice, partiality, corruption, or some other improper influence. *Lewis v. Pruitt,* 337 Pa.Super. 419, 487 A.2d 16 (1985). It has been stated that a new trial can be awarded on the basis of an excessive verdict only when the verdict is one which shocks the conscience of the court. *Hessler v. Suburban Propane*

*Natural Gas Company of Pennsylvania,* 402 Pa. 128, 166 A.2d 880 (1961).

In the instant case, it was shown that the Plaintiff's medical expenses totaled over $30,000.00. Moreover, the Plaintiff testified to having suffered excruciating pain, and was disabled for several months. In light of these factors and other evidence relating to damages which could have been considered by the jury, the size of the verdict is not shocking, and does not reflect any caprice, prejudice, or other impropriety by the jurors. Plainly, the size of the verdict in this case presents no basis for reversal.

Finally, the Appellant contends that the verdict was against the weight of the evidence. This claim finds no support in the record. The Plaintiff presented abundant evidence to establish that the treatment by Dr. Trotman was a departure from accepted and reasonable medical standards. The jury was free to accept such evidence, and reject the contrary evidence offered by the defense. Thus, the lower court did not err in refusing to grant judgment n.o.v. or a new trial based upon Defendant's argument that there was insufficient evidence to support the jury's verdict in the case, and we reject the Appellant's final claim of error.

The order of the lower court is hereby affirmed.