## Tavella v. Greengate Mall Inc.

C.P. of Westmoreland County, no. 5007 of 1994.

*Patrick J. Shannon,* for plaintiffs.
*Stephen M. Elek,* for defendant.

LOUGHRAN, *J.,* March 4, 1997—This case involves an accident which occurred on June 27, 1993 when plaintiff, Paul Tavella, slipped and fell on a wet substance located on the floor in a public area of Greengate Mall. Following his slip upon the wet substance, the plaintiff fell down 17 tile or brick steps to a landing below.

As a result of the fall, the plaintiff sustained severe and serious injuries to the head, back and left leg. Evidence at trial indicated that he received treatment from 1993 for several years subsequent to the incident.

This matter was tried to a jury commencing on October 7, 1996, with a verdict rendered on October 10, 1996. The jury's verdict was in favor of the husband-plaintiff in the amount of $420,000 and in favor of wife-plaintiff in the amount of $52,763.44. The jury also found the husband-plaintiff to be 7 percent negligent in connection with the fall, and therefore the verdict was molded to $390,600 for husband-plaintiff and $50,000 for wife-plaintiff for loss of consortium.

The defendant has filed a timely post-trial motion asserting various reasons for granting a new trial.

The first reason to be addressed is whether this court abused its discretion when permitting plaintiff's physician, Dr. Pae Muthappan, to testify at trial. The basis for this assertion is that Muthappan did not expressly state within the body of his report his opinion to a reasonable degree of medical certainty that the plaintiff's injuries were caused by the fall which occurred at Greengate Mall on June 27, 1993.

Pennsylvania Rule of Civil Procedure 4003.5(c) provides that an expert witness may not testify on direct examination concerning matters which are either *inconsistent with* or go beyond the fair scope of matters testified to in discovery proceedings or included in a separate report. *Greer v. Bryant,* 423 Pa. Super. 608, 621 A.2d 999 (1993).

The rule itself provides as follows:

"To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under this rule, his direct testimony at trial

may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings." Pennsylvania Rule of Civil Procedure 4003.5(c).

The important aspect of this rule is that the testimony not be permitted to go beyond the fair scope of the testimony in discovery proceedings, and that it should not be inconsistent with the scope of testimony in the discovery proceedings or in reports.

Pennsylvania courts have indicated that in determining whether an expert's trial testimony falls within the fair scope of his pretrial report, the trial court must determine whether the report "provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness." *Hickman v. Fruehauf Corp.,* 386 Pa. Super. 455, 459, 563 A.2d 155, 157 (1989), *appeal denied,* 528 Pa. 611, 596 A.2d 158 (1991). The trial court must also inquire whether or not there has been any surprise or prejudice to the party which is opposing the proffered testimony of the expert based upon any alleged deviation between the matters disclosed during discovery and the testimony of such expert at trial. *Trent v. Trotman,* 352 Pa. Super. 490, 508 A.2d 580 (1986).

In this case, it appeared that the injuries that Mr. Tavella suffered as a result of the fall which occurred on June 27, 1993 were at no time in dispute. Dr. Muthappan testified in his deposition for use at trial that Mr. Tavella suffered low back injury, left leg injury, and post-traumatic headaches which he related to the accident itself. The defense was well aware of the injuries

and there was never in any pretrial proceedings a dispute as to whether or not these injuries were caused by the accident. There was no evidence presented at the time of trial nor was there any issue before trial regarding any other potential cause for Mr. Tavella's injuries. There were no pre-existing conditions involved or at issue at trial, nor were there any subsequent injuries or accidents which would have presented an issue of causation to the jury. Therefore, utilizing the criteria in *Trent,* there was no surprise to the defense that Dr. Muthappan was going to testify that the injuries resulted from the fall.

Additionally, a review of the opening and closing speech of defense counsel, as well as a review of the in-chambers discussion relating to the motion in limine, shows clearly that defense conceded that there was no dispute as to injuries. Defense counsel's opening statement stated:

"We are not disputing that Mr. Tavella fell down the stairs, not even disputing that there was an injury that was suffered by Mr. Tavella. We are not disputing that this accident occurred. The issue that is before you, ladies and gentlemen, here for this trial is was Greengate Mall negligent with regard to the fact that there was a puddle of water at the top of the stairs, and that Mr. Tavella slipped in that puddle of water, and fell down the stairs." (Transcript of opening speech of defense counsel, p. 6.)

In light of the above, this court ascertained that there was no surprise to defendant that plaintiff's expert would contend that plaintiff's injuries came from the fall. Additionally, the defendant was given the option of a continuance to have the plaintiff examined if defendant's counsel felt he was surprised by Dr. Muthappan's testimony. Defense counsel refused the offered continuance and opted to move ahead with the trial.

Moreover, a complaining party must demonstrate a prejudice by the testimony. *Kemp v. Qualls,* 326 Pa. Super. 319, 473 A.2d 1369 (1984). As discussed, not only was no surprise or prejudice shown by defense counsel, the offered continuance was declined.

In Pennsylvania, the admission of expert testimony is a matter soundly within the discretion of the trial court. *Walsh v. Kubiak,* 443 Pa. Super. 284, 661 A.2d 416 (1995). Here, the defendant knew what Dr. Muthappan was going to testify to and was not contesting that the plaintiff was injured as a result of the fall. Accordingly, this court, finding no surprise or prejudice, properly exercised that discretion to allow the testimony.

The defendant's second argument centers around the position that the trial court improperly failed to grant defendant's motion for compulsory nonsuit on the issue of lack of notice.

Pennsylvania law is clear that a compulsory nonsuit may only be entered in cases where there is no doubt as to the inferences to be drawn from the evidence, and where the facts and circumstances lead unerringly to only one conclusion concerning which facts the minds of reasonable persons cannot honestly differ. Furthermore, any conflicts in the evidence must be resolved in the plaintiff's favor. *Griffin v. Tedesco,* 355 Pa. Super. 475, 513 A.2d 1020 (1986).

Stating the principle another way, "a nonsuit can be entered only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could not determine in his favor the controlling issues involved." *McMillan v. Mountain Laurel Racing Inc.,*

240 Pa. Super. 248, 251-52, 367 A.2d 1106, 1107-1108 (1976).

In considering a motion for compulsory nonsuit, the court must view the evidence in the light most advantageous to the plaintiff; the plaintiff must be given the benefit of all evidence favorable to him together with all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. *Laubach v. Haigh,* 433 Pa. 487, 252 A.2d 683 (1969).

According to the defendant, this court should have ruled, as a matter of law, that the evidence that the spill existed for 20 minutes prior to the fall could not constitute constructive notice to the defendant.

A defendant is chargeable with constructive notice if the defective condition existed for such a period of time that in the normal course of events, the condition would have come to the defendant's attention. To impute negligence, the plaintiff must show facts, evidence or circumstances sufficient to demonstrate constructive notice of the unsafe condition. Summary of Pa. Jurisprudence 2d §39.23. There must be positive testimony that the substance had been present on the floor for a substantial period of time prior to the plaintiff's fall thereby giving adequate notice to the defendant of its presence. *Davidson v. Upland,* 184 Pa. Super. 559, 136 A.2d 155 (1957). Constructive notice has been found to exist where a grease spot had been present on the floor for 30 minutes prior to a customer slipping and falling. *Diakolios v. Sears, Roebuck & Co.,* 387 Pa. 184, 127 A.2d 603 (1956).

In the instant case, testimony by Eric Hardy and by Frances Collinet established that there was at least a 20 minute period of time prior to the fall when the water was noticed on the floor. Whether or not this

evidence constituted a condition which existed for a sufficient period of time in order to amount to constructive notice was properly an issue which was left to the jury. Reasonable minds could certainly differ as to whether or not the 20 minutes was sufficient to constitute constructive notice, and accordingly, this issue was properly left for jury consideration.

The defendant's next issue that this court erred by failing to grant defendant's request for directed verdict has been stipulated in defendant's brief to be controlled by the discussion and issue of the compulsory nonsuit and, accordingly, need not be readdressed.

The next issues addressed by the defendant are argued together and raise the issues of whether the verdict was against the evidence and excessive.

The granting or the refusal to grant a new trial because of the excessiveness of the verdict is within the discretion of the trial court, and its decision will be sustained by an appellate court absent a gross abuse of that discretion. *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174 (1992). In determining whether a verdict is excessive a court may consider various factors: (1) The severity of the injuries; (2) whether the injury is manifested by objective physical evidence or whether it is only revealed by his objective testimony; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his or her employment; (5) the size of out-of-pocket expenses; (6) the amount of compensation demanded in the original complaint. *Kemp v. Philadelphia Transportation Co.*, 239 Pa. Super. 379, 361 A.2d 362 (1976). However, since each case is unique, the court should apply only those facts which are relevant to that particular case before determining if that verdict is excessive. *Mineo*

*v. Tancini,* 349 Pa. Super. 115, 502 A.2d 1300 (1986), *affirmed,* 517 Pa. 335, 536 A.2d 1323 (1988).

The assessment of noneconomic damages is primarily a matter for the jury, whose verdict will not ordinarily be set aside unless it is so excessive and contrary to the weight of the evidence as to shock one's sense of justice and make a new trial imperative in order that right may be given another opportunity to prevail. *Phillips v. Schoenberger,* 369 Pa. Super. 52, 534 A.2d 1075 (1987).

If a verdict is supported by evidence, it must be permitted to stand where there is nothing to suggest that the jury was in any way guided by partiality, prejudice, mistake or corruption. *Stoughton v. Kinzey,* 299 Pa. Super. 499, 445 A.2d 1240 (1982).

It is the duty of the court to enforce the jury's verdict unless the circumstances cry out for judicial interference. *Prather v. H-K Corp.,* 282 Pa. Super. 556, 423 A.2d 385 (1980).

Turning to the six evaluating criteria to determine excessiveness, the plaintiff presented two eyewitnesses who testified to an extremely severe fall and severe injury which one witness summarized by saying she was afraid that the plaintiff had died as a result of the fall. Surely the jury could well find that the injury was indeed severe.

The second criteria is whether or not the injury was objectively ascertainable by way of physical evidence. Various forms of evidence did come into the jury in the form of the independent witnesses' testimony as outlined above, as well as the testimony of Paul Tavella himself and his wife as to the injuries, the manifestations of the injury, and the way that the injuries affected Mr. Tavella's life. Additionally, the medical testimony provided objective testing which was performed during

the course of various examinations by Dr. Muthappan showing that an injury to the head, back and knee had occurred. Diagnoses were made by treating physicians including post-traumatic headaches, and chronic pain syndrome, which were used to describe the plaintiff's condition.

The third criteria is the permanency of the injury. Dr. Muthappan testified that the plaintiff's pain was in his opinion likely to last into the indefinite future, thereby meeting the criteria of permanency.

The fourth criteria is whether or not it is possible for the injured to continue with employment. Although the plaintiff did continue with employment after a three month wage loss, in his opinion he was unable to continue with the type of employment that he had been doing before, and had to change positions and companies in order to obtain a more supervisory position. Additionally, the plaintiff testified that after he returned to work, he worked on numerous occasions while in pain. (TT. p. 261.) He also testified that he adjusted his schedule accordingly so that he could work in a closer area that is more proximate to his house when he has periods and bouts of back pain, which last anywhere from three to four days. (TT. p. 267.)

Plaintiff testified that he continued to suffer from pain in 1996, over three years after the accident, on a fairly regular basis. (TT. p. 265.) He suffers from back pain and severe spasms which last anywhere from four to five days, which may occur anywhere from one to three times a month. (TT. pp. 265-66.) He suffers from headaches which occur one to two times per month (TT. p. 268), and he suffered from nosebleeds on a fairly frequent basis up to the end of 1994.

The plaintiff testified in detail the effects the injuries had on his ability to be a father and his ability to spend time and be active with his children. (TT. p. 270.) Testimony adduced at trial clearly showed the sadness of

the plaintiff in being unable to hold his children, being unable to play games with his children and be active with his children as a result of the incident. (TT. p. 270.) He continues to be unable to do a lot of household activities that he had done prior to the injury, and that he has feelings of uselessness as a result. (TT. p. 271.) Whereas before the plaintiff did the household work and chores himself, he now has someone else cut the grass and perform other household duties. (TT. p. 271.)

The wife-plaintiff similarly testified and expanded upon the same by relating her observations. The evidence as to the plaintiff's activities was *undisputed.* The evidence as to the plaintiff's pain, and how it affected his daily living was *undisputed* and credible. The evidence as to the severe impact that this injury had on both the husband and wife, plaintiffs, and their daily lives and their ability to care for their family, is *undisputed.*

The Supreme Court has made it clear that this type of loss or emotional pain is truly compensable, and should not be considered lightly when reviewing cases for allegations of excessiveness of verdict. See discussion in *Botek v. Mine Safety Appliance Corp., supra.*

Accordingly, it is the opinion of this court that the jury's verdict was not against the weight of the evidence nor excessive.

The last assertion for new trial is the charge and curative instruction given by the court on the issue of diminished earning capacity.

Although the court should not have charged the jury on the issue of diminished capacity, the charge was noticed by the court as given in error and a curative instruction was immediately given to correct the problem. Read as a whole, it is apparent that any error which was committed was corrected, and that the error was harmless because of the correction given.

Accordingly, defendant's motion for post-trial relief will be denied.

## ORDER

And now, to wit, March 4, 1997, after review and careful consideration of the within matter, it is hereby ordered, adjudged and decreed that the motion of Greengate Mall Inc. for post-trial relief is hereby denied.