## Groover v. Harrison

C.P. of Allegheny County, no. AR 99-1671.

*Anne M. McArdle,* for plaintiffs.

148

*Dana L. Bacsi,* for defendant.

BAER, *J.,* January 10, 2001—Plaintiff, Norma Groover was driving on Pittsburgh's Parkway East nearing the Squirrel Hill Tunnels when traffic forced her to slow. Defendant Russell Harrison Jr. hit her from behind, allegedly injuring her. Groover sued seeking compensation for pain and suffering, loss of enjoyment of life, embarrassment and humiliation. Her husband, Ernest Groover, sued claiming loss of consortium. Harrison admitted that his negligence caused the automobile accident, but denied that the automobile accident was the cause of any injuries the Groovers claimed to have suffered. A jury returned a verdict for Groover in the amount of $2,500, and the Groovers filed post-trial motions. By order of even date herewith, we deny the post-trial motions, and write to explain our ruling.

The decision as to whether a post-trial motion should be granted must be based on a review of all evidence of record. *Gill v. McGraw Electric Co.,* 264 Pa. Super. 368, 399 A.2d 1095 (1979). We proceed by conducting that review. At the time of the accident, Groover and her husband had been married about 19 years and were the parents of two children, ages 13 and 11. Groover was the sales and marketing manager for student loans for Mellon Bank, with whom she had been employed since 1978. She was required to drive a great deal, as part of this employment.

Groover has had back and neck problems for much of her life, and has availed herself of chiropractic treatments in search of relief. Medical tests administered to her in early 1995 revealed that she suffered from degenerative changes in her neck as well as scoliosis in

her back. Both the degenerative condition and the scoliosis can cause intermittent pain and impairment of functionality without other impetus.

In 1980, Groover sprained her back, and missed 10 days' work. On June 6, 1993, Groover was in an automobile accident that resulted in soft tissue injury to her back, and brought her under the care of an orthopedic surgeon. The doctor prescribed physical therapy. Groover did miss some work as a result of this accident. In March of 1994, Groover was in another automobile accident which was remarkably similar to the one resulting in this case. Her car was hit in the rear and pushed into another street. Groover was taken from the accident scene to the hospital by ambulance. It was determined eventually that she suffered soft tissue injuries to her neck, lower back, legs and shoulders. She became the patient of Dr. Rodney G. Gordon, an orthopedic surgeon.

Dr. Gordon ordered physical therapy for her and prescribed various medicines. On June 6, 1994, Groover experienced leg weakness causing her to lose her balance and to break a toe. While she was reluctant during questioning at trial to tie this difficulty to her prior history, every inference leads to the conclusion it resulted from the degenerative changes in her neck, the scoliosis in her back and the 1993 and 1994 automobile accidents.

After almost nine months of treatment, Groover still had not obtained complete relief. Accordingly, Dr. Gordon ordered a series of x-rays that revealed the degenerative problems in Groover's neck and scoliosis in her back referenced above. When the x-rays uncovered these maladies, Dr. Gordon suggested a bone scan, but

Groover declined to undergo this test. She obtained no further testing or treatment from Dr. Gordon after February of 1995 until the occurrence of the accident resulting in this case in October of 1997.

In September 1995, Dr. Gordon wrote a report stating that Groover continued to have neck and back problems because of the degenerative conditions and scoliosis, as exacerbated by the March 1994 accident.[1] Groover testified at trial that the 1994 accident caused her neck problems while working, traveling in an automobile and speaking on the telephone.

The accident that led to the instant litigation occurred on Thursday, October 23, 1997. Groover was hit from behind while slowing in traffic. There was significant damage to the involved vehicles. Groover did not lose consciousness. Indeed, she immediately used her cell phone to call her husband seeking direction, and, upon his advice, called the police. She got out of her car, exchanged information with Harrison and then drove her car from the scene and to her office before going home. She began experiencing pain that evening, and did not go to work on Friday, October 24, 1997. She made a doctor's appointment for Monday, October 27, 1997, with a Dr. Beasley, and received a prescription for various medicines on that date. She went to work on Tuesday, October 28, 1997, although she testified that at that juncture she was working despite being in pain.

Groover saw Dr. Beasley again on November 7, 1997 and on November 11, 1997, presented at the Shadyside

---

1. Dr. Gordon testified that he did not know about Groover's 1993 accident when he was writing this report. The record does not reflect whether Dr. Gordon was aware of the 1980 back strain.

Hospital emergency room complaining of back pain and requesting that x-rays be taken. An x-ray was taken of her lower back, and she was referred to Dr. Gordon, the orthopedic surgeon who had treated her after the 1994 accident. She saw him the next day, November 12, 1997, and complained of both back and neck pain.

Dr. Gordon prescribed various medicines and a course of physical therapy. He saw her again on December 17, 1997. Groover told the doctor that her neck and back pains were improving, and then, for the first time, mentioned an arm problem. Groover completed a regimen of 20 physical therapy visits on December 31, 1997, and saw Dr. Gordon once more on January 28, 1998. At that juncture, Groover said she was largely better, and Dr. Gordon released her from further treatment. Groover's total bills for hospital treatment, doctor treatment and physical therapy were $2,118.67.

Against this factual backdrop, Groover brought suit against Harrison contending that the October 27, 1997 accident resulted in back, neck and arm problems causing her significant pain, suffering, loss of enjoyment of life, annoyance and inconvenience. Mr. Groover sued for loss of consortium. Harrison conceded that he was negligent and that his negligence was the cause of the accident. He denied vigorously that the accident was the cause of any of the Groovers' damages, citing Groover's degenerative condition, scoliosis, 1980 back strain as well as her 1993 and 1994 accidents.

The case went to trial on September 13 and 14, 2000. The jury was called upon to decide whether the 1997 accident was a substantial factor in the causation of Groover's injuries, and, if so, the extent of those injuries and the appropriate award to compensate Groover

for them. After deliberations, the jury returned a verdict for the exact amount of the special damages, $2,118.67. From the bench, after the jury returned this verdict, we held that the recent case of *Davis v. Mullen,* 755 A.2d 693 (Pa. Super. 2000), required under these facts that some award be made for pain and suffering and that, therefore, a supplemental charge and further jury deliberations would be necessary.[2]

In accordance with the instructions contained in Judge Eakin's dissenting opinion in *Davis,* we gave a supplemental charge explaining to the jury that it must award something for pain and suffering. After further deliberations, the jury awarded $382 for pain and suffering, entering a revised verdict of $2,500.

2. After the opportunity for thoughtful deliberation, we are not convinced our ruling was correct in this regard. There is nothing in the *Davis* opinion that indicates that the defendant argued that any of plaintiff's injuries were the result of something other than the accident. Thus, in *Davis,* the defense admitted liability, and implicit in that admission was a concession that defendant both was negligent, and that his negligence was a substantial factor in bringing about all of the damages suffered by the plaintiff. In the instant case, the defense conceded only negligence, and not that this negligence was a substantial factor in the causation of any injuries to plaintiff. Thus, it cannot be said that the jury's original verdict in this case was not a compromise among jurors who wanted to return a defense verdict or a minimal amount disbelieving Groover's contentions and jurors who wanted to award more than the eventual verdict amount. If, in fact, this verdict was a compromise rather than a determination that Harrison's negligence was the cause-in-fact and proximate cause of all of Groover's injuries resulting in the special damages, then *Davis* would be inapplicable. As the defense has not appealed our decision that the jury redeliberate and award something for pain and suffering, we need not concern ourselves with whether we erred in delivering the supplemental charge.

Groover contends initially that the verdict of $382 for pain and suffering was clearly inadequate, and should shock the conscience of the court. See *Trent v. Trotman,* 352 Pa. Super. 490, 508 A.2d 580 (1986). Groover mistakenly bases this argument on the assumption that because Harrison admitted that he was negligent, the jury was required to return a verdict for her. This argument fails to distinguish between Harrison's concession of negligence and a concession of general liability. While Harrison conceded his negligence in this matter, he did not concede liability. Instead, he argued that his negligence was not a substantial factor in bringing about any of Groover's injuries. Under these facts, a defense verdict could have been entered. Moreover, as explained in note 1, the verdict initially entered in this case clearly could have been the result of a compromise among jurors. Under these facts, the jury's $2,500 verdict was not clearly inadequate and should not be overturned.

Groover next argues that our supplemental charge and re-charge after objections were confusing and suggested to the jury that it could return a verdict in a minimal amount for pain and suffering. Specifically, Groover complains that when we borrowed from the dissent's reasoning in *Davis v. Mullen, supra,* by explaining to the jury that if its verdict had been for $10 more or less, further deliberations might have been unnecessary, we suggested to the jury that it should award $10 for pain and suffering.

That portion of our charge was not directed to the amount of damages to be awarded for pain and suffering. Rather, it was to explain to the jury what was wrong with the verdict as entered, and therefore why the jury was required to deliberate further in this matter. After

Groover pointed out her concern with this portion of our supplemental instructions, we again spoke to the jury, and told them that an award for $10 more or less might still have required a new trial. We explained further that we were not setting a ballpark figure for pain and suffering, and that it was the jury's obligation to consider Groover's claims carefully, and to make a just and fair award. We stated that the award could be in any amount, from $100 to $1,000,000 and that we did not intend to suggest any particular sum. We believe strongly that when our supplemental charge is read in its totality, it makes sense, is not confusing and fairly instructed the jury as to its obligations in this case.

Groover next argues that the supplemental charge failed to inform the jury that it must enter an award for loss of consortium. Initially, we note that at no time during the discussion between the jury's initial verdict and our new instructions to the jury nor at the conclusion of our delivery of these new instructions did Groover's counsel request any additional charge regarding loss of consortium. Under these facts, this argument is waived. See Pa.R.C.P. 227.1 and the note which follows (error does not constitute grounds for post-trial relief unless timely objection is made).

Moreover, we reject that the jury had any obligation to award for loss of consortium under the facts of this case. The loss of consortium is the loss of the right of a spouse to the society, cooperation, affection and aid of the other spouse. It is the loss of the spouse's services. *Cleveland v. Johns-Manville Corp.,* 547 Pa. 402, 690 A.2d 1146 (1997). When Mr. Groover testified in this case and was asked how Groover's injuries affected him,

he said that he had to bring takeout food into the house because Groover was not cooking for the family; had to drive the children to more activities than usual; and had to do a few unspecified tasks around the house. He said the biggest inconvenience was the replacement of their vehicle. Under these facts, the jury could well have concluded that any loss of consortium in this case was de minimis, and did not require compensation.

Finally, we note that in our supplemental charge we asked the jury to again consider "other elements of damages . . . and with specificity the element of pain and suffering. . . ." We then requested that the jury "try to again discuss what amount of other damages and specifically pain and suffering you think occurred as a result of the injury that was attendant to these medical bills and make a fair award for that." Thus, we did not preclude reconsideration of loss of consortium, we simply did not emphasize it.

Groover makes two other claims, almost in passing, that can be dealt with summarily. Initially, she argues that we committed an error of law when we refused her point for charge requiring that we explain to the jury during the initial charge that pursuant to *Davis v. Mullen, supra,* it had an obligation to award for both actual damages and pain and suffering. As stated earlier in this opinion, we are not convinced that we were correct in charging regarding the "rule" of *Davis v. Mullen* at all.

Assuming arguendo that we should have given this instruction, we believe the better methodology for handling this situation is to await the need, deliver a supplemental instruction and have the jury redeliberate. This keeps already complex charges as simple as possible,

and does not prejudice plaintiffs. Indeed, one could argue that it gives a plaintiff two opportunities for a jury to consider damages: once, when the case is considered for the first time, and again when the judge instructs the jury that it must redeliberate regarding other elements of damages and make an award for pain and suffering.

Finally, Groover mentions in passing the serious allegation that there was racial prejudice in this verdict. There is no support whatsoever for such a claim. Groover was evidently African-American.[3] We have no idea what the array of the jury was. There was no objection to the jury's demographics at the time it was picked or when the trial began. The simple fact is that this jury disappointed Groover. There is not, however, any basis to conclude that race or any other inappropriate criteria had anything to do with the verdict rendered in this case.

## ORDER

And now, to-wit, January 10, 2001, in accordance with the opinion filed of even date herewith, it is hereby ordered, adjudged and decreed that plaintiffs' post-trial motions are denied. Judgment in the amount of $2,500 is entered on behalf of plaintiffs. Prothonotary to send Rule 236 notice.

---

3. We frankly do not remember her race and the record does not reflect it. We accept Groover's counsel's representation in this regard.