**Callum v. Scott**

C.P. of Lehigh County, no. 1998-C-562V.

*John R. Vivian Jr.,* for plaintiff.
*Mark H. Scoblionko,* for defendants.

FORD, *J.,* June 5, 2002—In January of 2001, defendants filed their "second motion in limine and motion for summary judgment of defendants/motion to strike objections to deposition of Marc E. Lippman M.D." On May 23, 2002, we entered an order granting some aspects of the motion and denying others. We explain our order in this opinion.

There are three parts to this motion. In the first, defendants seek an order precluding the testimony of plaintiff's

expert, Warren Walkow M.D., on the ground that his proffered opinions do not comply with the standard for admissibility of expert testimony stated in *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), adopted by Pennsylvania in *Commonweallh v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977). If the court had precluded the testimony of Dr. Walkow, the plaintiff argued that she was entitled to summary judgment. Dr. Walkow was the only causation liability expert identified by the plaintiff so, without that testimony, plaintiff would be unable to present competent evidence that the defendants caused injury to the plaintiff. In our May 23 order, we found that Dr. Walkow's proffered testimony met the required threshold, and we denied summary judgment.

In the second aspect of the motion, the defendants sought an order sustaining defense counsel's objections to questions posed by plaintiff's counsel to the defense liability expert, Marc Lippman M.D., during his trial deposition. In our May 23 order, we sustained the objections. Further, the defense sought to preclude the plaintiff from using certain portions of the plaintiffs medical records for any purposes at trial. We denied this request.

Third, defense counsel moved to dismiss the plaintiff's objections to questions posed by defense counsel during the trial deposition of Dr. Lippman. We denied this request and sustained plaintiff's objections to the questions because the questions were designed to elicit opinions that were beyond the scope of Dr. Lippman's expert report.

According to the complaint, the 35-year-old plaintiff discovered a hard area in her right breast in January of 1996. On January 18, 1996, she presented herself to the

defendant, Carolyn S. Scott M.D., for a gynecological exam and told the doctor what she discovered. In response, Dr. Scott denied such statement was made to her. It was Dr. Scott's position that she conducted a breast examination. After that, she noted in the plaintiff's record: "Breasts: significant fibrocystic changes. Patient states no change. No dominant masses, discharge, adenopathy." The plaintiff claimed that Dr. Scott advised her to take vitamins and to avoid caffeine. No further testing was ordered at that time.

On March 18, 1996, the plaintiff had another visit with Dr. Scott. She again complained of a hard area in her right breast. Dr. Scott made the following entry in the plaintiff's medical chart: "Right breast hard entire anterior breast with enlarged node right axilla." Dr. Scott ordered testing which revealed infiltrating ductal carcinoma of the right breast on March 20, 1996.

On August 16, 1996, the plaintiff had nodular involvement and underwent a right modified radical mastectomy after undergoing chemotherapy and radiation.

The plaintiff contended that the delay on the part of Dr. Scott in initiating diagnostic studies between January 18, 1996, and March 18, 1996, altered her treatment regimen and increased her chances for breast cancer recurrence.

We first explain why we permit Dr. Warren Walkow, an oncologist, to testify in accord with his expert reports.

Dr. Walkow's first report was dated August 17, 1998. In it, Dr. Walkow indicated that the malignancy was present and discoverable by mammography on January 18, 1996. Had it been discovered then, the tumor would

have been smaller. It would not have had positive lymph nodes or inflammatory signs. The course and treatment of it would have been more favorable if contrasted with the course and treatment upon its discovery two months later. According to the doctor, "two months did make a difference."

Defense counsel was correct that Dr. Walkow does not point to any methodology, medical literature or scientific data to support these opinions.

The defendants filed an earlier motion in limine and motion for summary judgment raising the same issues, namely, the deficiencies in Dr. Walkow's initial report. After argument, we entered an order on November 17, 2000, sustaining the defense position but permitting the plaintiff until December 11, 2000, to produce a supplemental report in an effort to cure deficiencies in the first report. A supplemental report dated December 5, 2000, was timely filed.

In the supplemental report, Dr. Walkow explained his statement that the malignancy was present and discoverable by mammography on January 18, 1996. Dr. Walkow accepted as true that the patient first noticed an abnormality in her right breast in January of 1996. It was small and near the superior aspect of the right breast. The later-diagnosed breast carcinoma developed at the same location. Dr. Walkow stated in his report:

"To dissociate that abnormality from the development of breast carcinoma in the same location requires the postulation of an implausible coincidence, *i.e.*, that a de novo malignant growth arose immediately after her presentation on January 18, 1998 (sic) and did so in the same

location. The scientific basis relied on is the negligible likelihood of this coincidence."

In the supplemental report, Dr. Walkow also wrote that mammography would have discovered the malignancy in January of 1996 because of the "widely accepted true positive rate of 90 percent for demonstration of malignancy by use of modalities of mammography."

Finally, Dr. Walkow explained the statement in the earlier report that "two months would have made a difference" by extrapolating data pertaining to lung cancer studies.

Plaintiff's counsel described Dr. Walkow as an oncologist in private practice for more than 25 years. Defense counsel pointed out that he was not board certified in oncology. The parties have not presented further information revealed in discovery about the background of Dr. Walkow. However, it appeared uncontroverted that an aspect of the conclusions reached by Dr. Walkow was his experience in treating breast cancer patients. Rather than arguing that there was no evidence that Dr. Walkow called upon his experience to reach his conclusions, defense counsel argued that experience alone cannot be basis for these opinions contained in the reports. Rather, the defense argued that, in this increased risk of harm case, the plaintiff must satisfy the rigorous *Frye* standard.

Under the *Frye* standard, proof of legal causation requires an expert opinion that sets forth a conclusion or uses a methodology generally accepted in the relevant scientific community. *Blum v. Merrell Dow Pharmaceuticals Inc.,* 564 Pa. 3, 764 A.2d 1 (2000); and *Blum v.*

*Merrell Dow Pharmaceuticals Inc.,* 705 A.2d 1314 (Pa. Super. 1997).

In that this is an increased risk of harm case, this first issue is resolved by consideration of *Smith v. Grab,* 705 A.2d 894 (Pa. Super. 1997).

The complaint of the plaintiff in this case was that Dr. Scott caused a delay in diagnosis of inflammatory breast cancer for approximately two months. Plaintiff alleged that the proper diagnosis should have been made in January of 1996, with appropriate treatment modalities immediately following, rather than two months later in March of 1996. Plaintiff claimed that the delay in diagnosis increased her risk of harm in regard to treatment modalities selected, cancer spread, the risk of recurrent cancer and diminished life expectancy.

*Smith v. Grab* also involved an alleged failure to timely diagnose inflammatory breast cancer. At trial, the plaintiff's expert, Dr. Singer, was asked if it was his opinion that a significant delay in the diagnosis of inflammatory breast cancer may have "potentially catastrophic consequences for . . . patients." Dr. Singer replied that it would because the cancer grows rapidly. In the view of the Superior Court, this testimony did not include the "magic words" but it still provided sufficient evidence for an increased risk of harm/shortened life expectancy claim. *Id.* at 900.

At trial, Dr. Singer testified that the bases for his opinions were his general knowledge, education, reading, and experience during 25 years as a practicing oncologist. He testified that, in his experience, inflammatory breast cancer rapidly grows and is capable of moving from one stage to another within weeks or months if not treated.

The Superior Court held that the trial court erred in striking Dr. Singer's testimony and erred in entering a nonsuit in favor of the defense. The trial court struck the expert's testimony due to a lack of authoritative basis for his opinion, which is the same argument made here by the defense as to Dr. Walkow's opinions.

According to the Superior Court, expert testimony of Dr. Singer should have been admitted in *Smith v. Grab* despite the complete absence of supporting literature. The fact that it was an increased risk of harm claim was significant. As then President Judge Emeritus Cirillo stated,

"Dr. Singer's failure to cite an article or text on point goes to the weight of his testimony, not its admissibility. The basis for Dr. Singer's testimony was his knowledge, education, reading and experience of 25 years as a practicing oncologist. Based upon such experience, he was able to offer an opinion that the delay in Mrs. Smith's diagnosis increased her risk of a shortened life expectancy. See *Joyce [v. Boulevard Physical Therapy Rehab. Ctr. P.C.], 694 A.2d [648,] 656 [(Pa. Super. 1997)]* (this court determined that it was not necessary to have an expert doctor cite to treatises and medical periodicals to support his articulation of the standard of care; his 30 years in the field of orthopedic medicine was sufficient to support an opinion regarding the relevant standard of care)." *Smith v. Grab, supra,* 705 A.2d at 900-901.

Dr. Walkow, like Dr. Singer in *Smith v. Grab,* set forth evidence of "increased risk of harm." Hence, under *Smith v. Grab,* it becomes the function of the jury, "to balance probabilities and decide whether [a physician's] negligence was a substantial factor in bringing about the harm." *Id.* at 900, citing *Hamil v. Bashline,* 481 Pa. 256,

273, 392 A.2d 1280, 1288-89 (1978). See also, *Thomas v. The West Bend Company Inc.,* 760 A.2d 1174 (Pa. Super. 2000), *alloc. denied,* 566 Pa. 647, 781 A.2d 147 (2001).

The proffered testimony of Dr. Walkow met the standard under *Smith v. Grab.* Accordingly, we denied that motion in limine. Because summary judgment may only be entered in a clear case where the moving party is entitled to relief as a matter of law, the related motion for summary judgment was denied too. *Todd Heller Inc. v. United Parcel Service Inc.,* 754 A.2d 689 (Pa. Super. 2000).

While we do not permit further motions for summary judgment on this issue, this is not necessarily the last word on the admissibility of Dr. Walkow's testimony. Pennsylvania Rule of Civil Procedure 207.1 creates a number of options for the trial judge to procedurally address expert testimony which is alleged to not be in accord with *Frye.* There is nothing in orders which we have entered to preclude the trial judge from revisiting issues of the competency of Dr. Walkow to express opinions on subjects as she, the trial judge, sees fit.

We next address the motion in limine whereby the defense requested that we sustain defense counsel's objections during the trial deposition of Dr. Lippman. The defense objections were to attempts by plaintiff's counsel to have Dr. Lippman identify medical records and repeat statements recorded therein made by the plaintiff to physicians who treated her in March of 1996 and thereafter. The statements made to these physicians by the plaintiff in and after March of 1996 were self-serving. In them, plaintiff reported that she told defendant, Dr. Scott,

at the January 1996 appointment, that she found a mass in her right breast. Whether the plaintiff complained of irregularities in her right breast during the January 1996 appointment will be one of the crucial findings the jury will have to make.

We have read the trial deposition cross-examination of Dr. Lippman wherein plaintiff's counsel attempted to introduce plaintiffs self-serving statements from her medical records. Plaintiff's counsel impermissibly attempted to use Dr. Lippman as a vehicle to place those statements on the trial record in this case. There were no proper follow-up hypothetical or other questions after those statements were established. In our May 23 order, we sustained defense counsel's objections to these questions. The statements were not independently admissible, and we did not permit the plaintiff to use Dr. Lippman as the tool to get otherwise objectionable material before the jury.

Defense counsel has properly cited *Williams v. McClain,* 513 Pa. 300, 520 A.2d 1374 (1987) for admission of medical records. According to the Supreme Court,

"A medical record is admissible under the business records exception to the hearsay rule if the report: (1) was made contemporaneously with the events it purports to relate, (2) at the time the report was prepared, it was impossible to anticipate reasons which might arise in the future for making a false entry in the original, and (3) the person responsible for the statements contained in the report is known." *Id.* at 305, 520 A.2d at 1376.

The first two requirements for admission of a medical record under the business exception to the hearsay rule were obviously not met. The statements to the subse-

quent treating physicians were not made contemporaneously with the event described. They were made months later. Also, when the reports of the subsequent treating physicians were prepared, reasons existed for plaintiff to provide false information for the physicians to record in the records as the case proceeded to litigation. (This is not a finding of falsehood by the plaintiff. Rather, it is nothing more than a consideration of the second element for admissibility under the medical business records exception to the hearsay rule.)

Also, the statements were not admissible under the medical treatment exception to the hearsay rule. This rule was set forth in *Swift v. Northeastern Hospital of Philadelphia,* 456 Pa. Super. 330, 690 A.2d 719 (1997), *alloc. denied,* 549 Pa. 716, 701 A.2d 577 (1997). According to *Swift,* out of court statements which were made for purposes of receiving medical treatment can be admitted as substantive evidence under certain circumstances. *See id.* at 334, 690 A.2d at 721. There was no showing during the course of the questioning of Dr. Lippman by plaintiff's counsel that the recorded statements of the plaintiff were for the purposes of medical treatment.

The existence of Pennsylvania Rule of Evidence 803(4) did not salvage these cross-examination questions from the plaintiff's attorney because plaintiff's statements reflected in the records were not, as we have pointed out, for medical treatment or diagnosis.

We did not, however, preclude the use of these entries for all purposes at trial. We did not know for what purpose counsel may seek to introduce the entries at trial. The full content of the records and all the reasons for the recording of these entries were not clear to us. Accord-

ingly, the trial judge must necessarily make the rulings pertaining to these entries in the medical records if other attempts are made to introduce them at trial.

Finally, the defense motion contained a request that we deny and dismiss the objections by plaintiff's counsel to questions posed to Dr. Lippman by defense counsel which asked for opinions beyond the scope of Dr. Lippman's expert report of July 28, 1999. As we stated earlier, the objections by plaintiff's counsel were well placed. We did not dismiss the objections. We sustained them.

An expert is permitted only to testify to subjects fairly covered within the expert report provided during the course of discovery. Pa.R.C.P. 4003.5. See *Millard v. Nagle,* 402 Pa. Super. 376, 403, 587 A.2d 10, 23 (1991), *affirmed,* 533 Pa. 410, 625 A.2d 641 (1993) and *Trent v. Trotman,* 352 Pa. Super. 490, 508 A.2d 580 (1986).

"The relevant inquiry in any case involving the interpretation of Rule 4003.5 . . . is whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert, based upon any alleged deviation between the matters disclosed during discovery, and the testimony of such expert at trial." *Trent, supra* at 502, 508 A.2d at 587.

"[I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word 'fair.' *The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or*

*which would mislead the adversary as to the nature of the appropriate response." Chanthavong v. Tran,* 452 Pa. Super. 378, 389, 682 A.2d 334, 339-40 (1996) (emphasis in original), quoting *Walsh v. Kubiak,* 443 Pa. Super. 284, 291-92, 661 A.2d 416, 420 (1995), *allocatur denied,* 543 Pa. 716, 672 A.2d 309 (1996).

Dr. Lippman's trial deposition was taken in Washington, D.C. The report of Dr. Lippman did not address, directly or by fair inference, subjects raised by defense counsel during his questioning. The subjects defense counsel tried to have Dr. Lippman discuss were the length of time the cancer was present in Ms. Callum's body, the stage of Ms. Callum's cancer in January of 1996, prognosis for women with breast cancer who survive more than five years after diagnosis, plaintiff's probability for a cure in January and March of 1996, and other long-term survival opinion questions.

Plaintiff's counsel claimed that he was unprepared for cross-examination on each of these subjects at the trial deposition. It was easy to see why because they were subjects as to which there was not even a hint in the report of Dr. Lippman.

Fairness required that we sustain the objections of plaintiff's counsel to each of these questions and that we strike those portions of the testimony of Dr. Lippman.

### ORDER

Now June 5, 2002, after consideration of the briefs of the attorneys and argument on "second motion in limine and motion for summary judgment of defendants/motion to strike objections to deposition of Marc E. Lippman M.D.," it is hereby ordered as follows:

14

(1) The motion in limine as to the testimony of Warren Walkow M.D, is denied and the motion for summary judgment is denied.

(2) The motion in limine "regarding certain portions of medical records" is granted in part and denied in part. The motion is granted to the extent that the defense counsel's objections during the trial deposition of Dr. Lippman to questions posed by plaintiff's counsel in attempting to identify and introduce into evidence contested portions of the medical records of the plaintiff are sustained. The motion is denied to the extent that all use at trial of these entries in the medical records is not precluded through this pretrial order. Rather, decision on the admissibility of these items is deferred for action by the trial judge if there are attempts to introduce these items at trial.

(3) The motion to dismiss objections made by plaintiff's counsel during Dr. Lippman's trial deposition pertaining to matters outside the scope of Dr. Lippman's expert report is denied. Moreover, the objections by plaintiff's counsel are sustained.