**Reithmeier v. Bogucki**

*James E. Beasley,* for plaintiff.

*Robert F. Fortin,* for defendant Bogucki.

*Gary J. Brascetta,* for defendant Frankford Hospital-Torresdale Division.

JONES II, *J.,* September 20, 2001—The within matter is a medical malpractice action arising from an al-

leged failure by defendants to properly accommodate plaintiff's latex allergy during surgery. At the conclusion of a jury trial on March 21, 2001, the jury returned a defense verdict. Plaintiff filed post-trial motions on April 2, 2001, which were denied by this court on July 25, 2001. The within appeal followed, wherein plaintiff is re-asserting that this court erred in: (1) failing to *fully* reinstruct the jury on liability regarding Frankford Hospital when they requested the same and again when they asked for a second time; (2) permitting defendants' experts to testify beyond the scope of their expert reports, including the theory of "pneumoperitoneum" as a cause of decreased blood pressure; (3) limiting plaintiff's cross-examination of defendant Frankford Hospital's witness, Barbara Burch, on testimony elicited under oath at the evidentiary hearing, of which she was a participant and witness; (4) limiting plaintiff's cross-examination of defendant's expert Sandra Larson R.N., on the basis for her opinions regarding when the standard of care required hospitals to have a latex policy; and, (5) impermissibly allowing, over objection, defense counsel Robert Fortin to argue that plaintiff was "attempting to take money away from the defendant Alfred R. Bogucki M.D." See attachment "A."[1]

## DISCUSSION

Plaintiff first asserts that the trial court erred in failing to *completely* reinstruct the jury on liability when they

---

1. Plaintiff raises additional issues in her concise statement of matters complained of on appeal. However, since plaintiff failed to brief or argue these issues for this court's review during the post-trial motion stage of the proceedings, said issues must be deemed waived for purposes of the instant appeal.

requested the same and again when they asked for a second time. See attachment "A," ¶¶1 and 2.

During a sidebar conference on this issue, plaintiff's counsel asserted that the entire liability instruction should be read, including negligence and adverse inference. Counsel for defendant Frankford Hospital contended that only those portions of the liability charge dealing specifically with Frankford Hospital should be read. Upon reviewing the proposed charges in conjunction with the evidence presented and the jury's inquiry, this court informed counsel that it would reinstruct on legal cause and ostensible agency. In response, plaintiff's counsel further asserted that said instructions needed to be prefaced by a negligence definition and put into context of the corporation's role with regard to legal cause so that the jury did not think the instruction pertained only to the doctor. This court declined to do so and ruled as follows:

"Counsel, counsel, what I'm suggesting to you is clearly at this point the jury is not going to throw out everything else that I read just because I'm going to read the law on ostensible agency and legal cause and corporate status. I can't fathom that that would happen and I certainly can't fathom that as a matter of law, that is in any way error." N.T. 3/20/01, pp. 16-17.

The following then occurred:

"Now, I have reviewed what has been marked as jury exhibit no. 8, which reads as follows: 'Could you please restate the charges to us regarding the liability of Frankford Hospital.' Members of the jury, I shall endeavor to answer this question, but because I cannot read your minds, I'm going to answer it as best I can with

specific instructions. If these instructions do not suffice, do not cover exactly what it is that you intended, please, all you need do is write another request being more specific, that's all. All right. I shall give you three instructions and also keep in mind that as you are aware because this is a very astute jury, I gave a lot of instructions, a lot of them are generic so that they would apply to Frankford Hospital as well, but these are the ones that I think you want to hear. If not, again, all you need to do is send me another missive." N.T. 3/21/01, pp. 13-14.

This court then proceeded to reinstruct the jury on the status of the hospital, legal cause and ostensible agency. See N.T. 3/21/01, pp. 14-15.

In *Smick v. City of Philadelphia,* 161 Pa. Commw. 622, 638 A.2d 287 (1994), *appeal denied,* 539 Pa. 660, 651 A.2d 546 (1994), the court set forth the standard to be applied regarding requests by a jury for reinstruction or clarification:

"Where a jury returns on its own motion and indicates confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion. . . . This rule commits to the sound discretion of the trial judge the scope of such additional instructions as he or she decides to give to a jury that has expressed confusion." *Id.* at 631, 638 A.2d at 291.

In the instant matter, this court's ruling was in complete accordance with the foregoing standard. Additional, yet very specific, instructions were given in response to what this court believed the jury was asking for. Moreover, the court invited the jury to subsequently seek fur-

ther clarification, should the same be necessary. The jury did in fact return with a follow-up question: "Are the charges specific to the defendant's negligent use of latex or are the charges negligence in general?" See N.T. 3/21/01, p. 16. Upon hearing the question, defense counsel for Dr. Bogucki asked for a mistrial on the basis that "the jury has demonstrated that they can't reach a conclusion and . . . to let them go on any longer is going to be prejudicial frankly to both sides." N.T. 3/21/01, p. 17. Counsel for the plaintiff asserted that a mistrial was not proper and that instead, the jury should simply be instructed to recall the testimony they heard during trial. See N.T. 3/21/01, p. 18. Pursuant to language agreed upon by, and between, this court and counsel, the jury was informed that the court was unable to answer their question and that they should decide all questions of fact and then apply the law as instructed. N.T. 3/21/01, pp. 21-22.

Despite the fact that this court addressed the jury's follow-up question in essentially the same manner recommended by plaintiff, plaintiff now asserts that the nature of the jury's inquiry regarding latex use/negligence, combined with the fact that the jury was then deadlocked as to one defendant (ultimately returning with a defense verdict), necessarily shows that they were confused, thereby causing them to reach the wrong result. Clearly, the record does not support such a theory.

Accordingly, plaintiff's first issue is without merit.

Plaintiff's next contention on appeal is that this court erred in limiting her counsel's cross-examination of defendant Alfred R. Bogucki M.D., regarding the location

of the missing operative note and that this court erred in limiting cross-examination of defendants' expert witnesses on the substance of their testimony. See attachment "A," ¶¶3 and 4. Inasmuch as these issues were not briefed or argued for purposes of post-trial motions, the same must be deemed waived on appeal. See plaintiff's brief in support of motion for post-trial relief; N.T. 7/24/01, pp. 2-10.

In *Bryant v. Girard Bank,* 358 Pa. Super. 335, 517 A.2d 968 (1986), it was held that failure to raise, suggest or brief issues in post-trial motions results in waiver for failure to preserve. Similarly, in *Kraus v. Taylor,* 710 A.2d 1142 (Pa. Super. 1998), *appeal granted,* 556 Pa. 257, 727 A.2d 1109 (1999), *appeal dismissed as improvidently granted,* 560 Pa. 220, 743 A.2d 451 (2000), the court stated as follows:

"None of appellant's remaining issues are properly before this court. Appellant's third and fourth issues, concerning the weight and sufficiency of the evidence, were not properly preserved in the lower court. In order to preserve an issue for appellate review following a civil verdict, the issue must first be raised in a post-trial motion. . . . *Moreover, an issue raised in a post-trial motion is waived unless it is briefed or argued in post-trial proceedings.* . . . Full development of issues in the lower court serves an important function in the orderly and efficient use of our judicial resources. . . . Here, appellant filed a post-trial motion asserting that the court committed 62 separate errors. Appellant, however, reduced the number of errors to 13 in the brief he filed in support of his motion. . . . No oral argument on appellant's motion was heard. The trial court correctly concluded that the

remaining 50 errors were abandoned and declined to consider them. . . . None of the 13 errors appellant argued before the trial court concern either the weight or the sufficiency of the evidence. Accordingly, appellant's failure to preserve these issues precludes our review." *Id.* at 1146-47. (citations omitted) (emphasis added) See also, *The Insurance Company of Evanston v. Bowers,* 758 A.2d 213 (Pa. Super. 2000).

In accordance with the foregoing standard, these two issues as presented by plaintiff on appeal, are rendered waived.

Next, plaintiff contends that this court erred in permitting defendants' experts to testify beyond the scope of their reports, with particular regard to the theory of "pneumoperitoneum." See attachment "A," ¶5.

Pursuant to Rule 4003.5(c) of the Pennsylvania Rules of Civil Procedure:

"To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters which he has not been interrogated in the discovery proceedings." Pa.R.C.P. 4003.5.

In *Butler v. Kiwi,* 412 Pa. Super. 591, 604 A.2d 270 (1992), *appeal denied,* 531 Pa. 650, 613 A.2d 556 (1992), the court was faced with a situation wherein a motorcycle accident analyst prepared a report approximately

one month prior to trial, regarding the manner in which helmets operate to protect a motorcyclist's head from trauma. At trial, the same expert testified as to the manner in which the helmet in question was pulled off of the victim's head and the cause of the skull fractures to the victim. The court determined that this testimony was within the fair scope of the report and did not result in unfairness, surprise or prejudice to the other party. *Id.* at 601-603, 604 A.2d at 275-76.

In yet another matter entitled *Trent v. Trotman,* 352 Pa. Super. 490, 508 A.2d 580 (1986), appellee's expert at trial began to discuss the issue of causation, which was not specifically mentioned in his answers to interrogatories. Appellant contended that the trial court erred in permitting appellee's expert to testify beyond the scope of his answers to interrogatories. The court held that:

"While the word 'causation' was not specifically mentioned in the interrogatories completed by the plaintiff regarding Dr. Rosenberg's expected testimony, it is certainly clear that his testimony concerning causation, challenged by the appellant, was within the 'fair scope' of the answers to interrogatories provided by the plaintiff prior to trial." *Id.* at 502, 508 A.2d at 586-87.

Aside from the foundation issue involved, the standard by which "fair scope" issues are to be assessed "is whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert, based upon any alleged deviation between the matters disclosed during discovery, and the testimony of such expert at trial." *Hickman v. Fruehauf Corporation,* 386 Pa. Super. 455, 459, 563 A.2d 155, 157 (1989), *appeal denied,* 528 Pa. 611, 596 A.2d 158 (1991). Further,

"In deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word 'fair.' The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response . . . . *'Fair scope' contemplates a reasonable explanation and even an enlargement of the expert's written words." Id.,* quoting *Wilkes-Barre Iron v. Pargas of Wilkes-Barre,* 348 Pa. Super. 285, 290, 502 A.2d 210, 212-13 (1985). (emphasis added)

Plaintiff's main point of contention is that this court's decision to allow defendants to explore the "pneumoperitoneum" phenomenon on rebuttal was improper and prejudicial. Similarly, plaintiff asserts she was never given notice that the same would be relied upon, as it was absent from all discovery, including the expert's report.

During trial, plaintiff's expert testified that her low blood pressure was caused by an allergic reaction to latex:

"Dr. Brandon: The patient during her initial surgery, the first one, showed signs and symptoms of an allergic reaction and those signs and symptoms would be her blood pressure dropped very low even with the use of blood pressure drugs to try to raise the blood pressure and additional intravenous fluid it still stayed low and her pulmonary or her lung function was markedly abnormal and *there was no other reason during the sur-*

*gery for that to have been the case* and in addition to that, the anesthetic agents that were being given to her to keep her asleep were actually cut way down in an effort to have her body react to the pain to bring her blood pressure back up and that still didn't work, so it's obvious that her body is having a reaction which is *most likely* an allergic reaction.

"Mr. Beasley: Tell me what you meant when you said there was no other reason.

"Dr. Brandon: When I examined the medical records of the patient, and in particular her anesthesia record, there was no—there was nothing happening to her within the surgery that would cause her blood pressure to drop as low as it did and to make it to the point where the anesthesiologist had to hyperventilate the patient in order to keep her oxygenation normal. The surgeon hadn't done anything that would cause that to be the case and there was no other substance added into her system that would have caused that." N.T. 3/7/01, pp. 107-108. (emphasis added)

Under the circumstances as set forth at trial and hereinabove, discussion of pneumoperitoneum fell under the general concept of blood loss/low blood pressure and constituted *another possible reason* for the same. Plaintiff's expert opened the door by stating that there was no other reason, therefore, although not specifically set forth in Dr. Aukburg's report, discussion of pneumoperitoneum was clearly rebuttal testimony.

In *Foflygen v. Allegheny General Hospital,* 723 A.2d 705 (Pa. Super. 1999), *appeal denied,* 559 Pa. 705, 740 A.2d 233 (1999), the court clearly set forth the standard

for determining "fair scope" with particular regard to rebuttal:

"[I]n determining whether an expert's trial testimony falls within the fair scope of his pretrial report, the trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness. The trial court must also inquire whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert, based upon any alleged deviation between the matters disclosed during discovery, and the testimony of such expert at trial. What constitutes surprise and prejudice, however, depends upon the pretrial particulars of each case. . . . In addition, '[f]act testimony may include opinion or inferences so long as those opinions or inferences are rationally based on the witness' perceptions and helpful to a clear understanding of his or her testimony.' . . . *Further, 'an expert may base his or her opinion on facts learned by listening to testimony at trial.' . . . Where an expert's fact/opinion testimony is fair rebuttal to the other party's expert testimony, it cannot be seen as unfairly surprising or prejudicial.*" *Id.* at 709-10. (citations omitted) (emphasis added)

The court in *Foflygen* ultimately determined that the expert at issue in that case was "simply responding to appellant's expert's testimony given at trial." *Id.* at 710. Such is the case at bar.

It is also important to note that from the time defense expert, Dr. Josloff, presented his first response involving the term "pneumoperitoneum," until the end of his discussion, no objection was lodged by plaintiff. See N.T.

3/12/01, p.61. Moreover, on cross-examination of Dr. Josloff, plaintiff's counsel raised the issue himself. See N.T. 3/12/01, p. 143. Accordingly, this issue must be deemed waived with regard to Dr. Josloff.

With specific regard to Dr. Aukburg, counsel for plaintiff had a continuing objection to any discussion by the doctor regarding pneumoperitoneum. However, at one point in time, the following discussion took place by and between counsel and the court:

"The Court: What is pneumoperitoneum?

"Mr. Beasley: When they put air in the belly, it presses on the vena cava and it's hard for the blood to get back from the legs to the heart and therefore you have less blood to the heart and less blood going out of the heart and less pressure. I know what it is.[2]

"The Court: No, no, but in terms of the case, how does it prejudice your case?

"Mr. Beasley: Because my preparation for this case deals not only with the medical record, but also the literature and I would have explored the literature with this gentleman and asked him because I mean I have not had an opportunity to prepare at Jefferson Library to deal with that issue. I certainly would have, as I have for other issues and that's how I'm prejudiced, but that's been dealt with, I'm not even trying to relive it. What I'm getting at is there are facts here which are coming into evidence that I think even exceed the *Allegheny* opinion. To the extent that this witness is now going to tell me or tell the jury it's a dilutional anemia, it's not all result of blood

---

2. The fact that plaintiff's counsel possesses a medical degree also goes to the issue of surprise—or lack thereof.

loss, it's also this and that, that's another theory that I'm being confronted with. I can manage it on my feet to an extent, but I have not had the opportunity to fully prepare for it. I'll do the best I can and that's why I just want to make objection on the record to this, because I'm glad his report is marked because I think that when the report is compared with this testimony, there will be differences.

"The Court: Anything further?

"Mr. Brascetta: Well, Judge, just that dilutional anemia falls under the whole broad category of blood loss. This expert is here to testify, as he did in his report, that this was not blood loss—that this was blood loss and not anaphylaxis.

"The Court: Mr. Fortin.

"Mr. Fortin: Your Honor, I would like to add at this point and there had been objections raised to the plaintiff's—the extent to which the plaintiff's experts had gone beyond the scope of their report because if you'll recall in particular Dr. Brandon's report was very, very conclusory. It was a page and a quarter and the doctor went into extraordinary detail to justify the opinions that were arguably outside the scope of his report which nonetheless came in, which is why all of this becomes necessary because now the plaintiff has put all of this in issue, and the defendants have an absolute right to rebut this testimony in an appropriate way and that's all that has been happening here with this anesthesia expert Dr. Aukburg.

"The Court: All right. I'm satisfied. The objection is overruled. You have an exception." N.T. 3/12/01, pp. 53-56.

In view of the foregoing exchange, as well as the standards set forth hereinabove, plaintiff was in no way prejudiced and this issue must be deemed meritless.

Plaintiff next contends that the trial court erred in limiting her cross-examination of defendant Frankford Hospital's witness Barbara Burch, on testimony elicited under oath at the evidentiary hearing. See attachment "A," ¶6.

During trial, plaintiff sought to cross-examine Barbara Burch regarding an inconsistent answer provided by another individual, Patricia Roth, pertaining to the existence (or nonexistence) of institution-wide latex policies at Frankford Hospital. During an evidentiary hearing before the Honorable Mark I. Bernstein, Ms. Burch claimed that there was such a policy, while Ms. Roth testified that there was not. Instead of calling Ms. Roth as a witness, plaintiff attempted to impeach her evidentiary hearing testimony through cross-examination of Ms. Burch:

"Mr. Beasley: . . . and do you recall Frankford's risk manager testifying with the one word answer no when asked whether there was an institutional latex policy in May of 1997?

"Mr. Brascetta: Objection.

"The Court: Sustained.

"Mr. Brascetta: Your Honor, I move to strike.

"The Court: The question as I said at the outset of the trial, questions by the attorneys are not evidence. In this instance, counsel has just asked a question wherein he read something and gave an answer. That cannot be considered by this jury and it is stricken from your recollection. Thank you very much." N.T. 3/15/01, pp. 14-15.

Clearly, it was inappropriate to question Ms. Burch on the validity of testimony given by Ms. Roth, when plaintiff could have called Ms. Roth to the stand and pursued impeachment the proper way. Inasmuch as plaintiff proffered no explanation regarding the availability or unavailability of Ms. Roth, any testimony elicited from Ms. Burch regarding Ms. Roth's previous testimony would have constituted hearsay. Accordingly, this issue as raised by plaintiff on appeal, must be dismissed as without merit.

Plaintiff next contends that this court erred in failing to permit her to fully cross-examine defendant Frankford Hospital's anesthesia and nursing witnesses, Dr. Perrins and Nurse Cost. See attachment "A," ¶7.

Once again, this issue must be deemed waived, as it was not briefed or argued for purposes of consideration by this court during the post-trial motion stage. See *Kraus v. Taylor,* 710 A.2d 1142, 1146 (Pa. Super. 1998), *appeal granted,* 556 Pa. 257, 727 A.2d 1109 (1999), *appeal dismissed as improvidently granted,* 560 Pa. 220, 743 A.2d 451 (2000). See also, plaintiff's brief in support of motion for post-trial relief; N.T. 7/24/01, pp. 2-10.

Plaintiff's next assertion on appeal is that this court erred in impermissibly allowing defense counsel, Mr. Fortin, to argue that plaintiff was "attempting to take money away from the defendant, Alfred R. Bogucki M.D." See attachment "A," ¶8.

It is well-established that:

"When reviewing objectionable remarks made by trial counsel in closing argument, they must not be viewed in isolation, but rather, in the context of opposing counsel's closing argument. . . . Furthermore, a new trial is not

required where the remarks made by counsel were neither inflammatory or prejudicial." *Alexander v. Carlisle Corporation,* 449 Pa. Super. 416, 422, 674 A.2d 268, 271 (1996). (citation omitted)

Similarly, the Pennsylvania Supreme Court has opined that: "[s]o long as no liberties are taken with the evidence, a lawyer is free to draw such inferences as he wishes from the testimony and to present his case in the light most suited to advance his cause and win a verdict in the jury box." *Wagner v. Anzon Inc.,* 453 Pa. Super. 619, 635, 684 A.2d 570, 578 (1996), *appeal denied,* 549 Pa. 704, 700 A.2d 443 (1997), quoting *Contractors Lumber and Supply Company v. Quinette,* 386 Pa. 517, 522, 126 A.2d 442, 444 (1956).

However,

"[T]his latitude does not include discussion of facts not in evidence which are prejudicial to the opposing party. . . . In general, any prejudicial remarks made by counsel during argument can be handled 'within the broad powers and discretion of the trial judge and his actions will not be disturbed on appeal unless there is an obvious abuse of discretion.' " *Id.,* quoting *Wilf v. Philadelphia Modeling & Charm School Inc.,* 205 Pa. Super. 196, 204, 208 A.2d 294, 298-99 (1965). (citation omitted)

Inasmuch as arguments by counsel must be viewed in their full context, it becomes clear that this isolated statement, as objected to by plaintiff, was not inflammatory or prejudicial when assessed in relation to Mr. Fortin's entire argument. Counsel was simply trying to emphasize the power a jury possesses in rendering a verdict in a case such as this, and the significance its decision would

have on the parties. It should be deemed nothing more than an argument of common sense, for obviously, if the jury was to find Doctor Bogucki negligent, it would necessarily be understood that he would be responsible for compensating plaintiff for her injuries.

In a case entitled *Goldmas v. Acme Markets Inc.,* 393 Pa. Super. 245, 574 A.2d 100 (1990), the court was faced with the following scenario:

"Specifically, Acme claims that it was prejudiced by counsel's claims that Goldmas had *unpaid* medical bills. Apparently, Acme contends that this argument was not supported by the evidence and was made by Goldmas' counsel for the sole purpose of eliciting juror sympathy. The trial court dismissed this claim on the grounds that there is evidence of medical bills in the record. A review of the exhibits admitted during trial does include some medical bills. In any event, we are convinced that even if some of these bills were actually paid at the time of trial, Acme was not unduly prejudiced by counsel's closing remarks. There is no dispute that Goldmas received medical treatment for which he was charged, and for which he was entitled to seek contribution in his suit against Acme. Under the circumstances, Acme was not prejudiced by counsel's comments even assuming, arguendo, that some of the medical bills had been paid." *Id.* at 253, 574 A.2d at 104.

A similar argument could be made in the instant case. Here, the dispute between the parties revolved, in part, around whether or not the doctor was negligent in his treatment of plaintiff. As such, there can be no dispute that in the event plaintiff would succeed in her claim, she would essentially be "taking" money from defen-

dant Bogucki to compensate her for his negligence. Counsel was simply arguing the bottom line.

Moreover, when counsel for plaintiff objected to the comment "Mr. Beasley wants you to make a decision in this case that will take Dr. Bogucki's money from him and give it to Ms. Reithmeier," this court stated: "It's argument. Overruled." N.T. 3/16/01, p. 3. This ruling by the court, taken in conjunction with its opening instructions to the jury regarding argument not being considered as evidence, clearly cured any prejudice that may have resulted from the comment.

In her ninth issue on appeal, plaintiff simply states: "The trial court erred in its ruling on evidentiary issues not raised in the defendants' expert reports." See attachment "A," ¶9.

This issue, as set forth in plaintiff's concise statement of matters complained of on appeal, is not sufficiently specific for this court to properly address. The vagueness of plaintiff's allegation(s), hinders this court's ability to know exactly what evidentiary issues and reports she is referring to. Without specific allegations as to the same, this court can offer no opinion.

Next, plaintiff asserts that defendant Frankford Hospital was improperly permitted to argue there was a hospital policy in effect regarding latex during the May 1, 1997 treatment of plaintiff. See attachment "A," ¶10.

Inasmuch as this issue was not raised in plaintiff's brief, nor during oral arguments, it should be deemed waived. See plaintiff's brief in support of motion for post-trial relief; N.T. 7/24/01, pp. 2-10. However, in her brief and during arguments, plaintiff did assert that this court erred

in limiting her cross-examination of Sandra Larson R.N. on the basis for her opinions regarding when the standard of care required hospitals to have a latex policy. See plaintiff's brief in support of motion for post-trial relief, p. 9; N.T. 7/24/01, pp. 6-8. Although this is an entirely different issue, this court will address it as if preserved.

During trial, defendant Frankford Hospital called nursing expert Sandra Larson R.N., to the stand to discuss the promulgation of standards regarding use of latex for medical treatment by hospitals. Ms. Larson testified that the Association of Operating Room Nurses provides the standards and guidelines utilized by hospitals in establishing their operating room procedures. See N.T. 3/15/01, p. 12. Ms. Larson further testified that at the time of plaintiff's surgery in 1997, AORN had not yet issued any standards or recommended practices regarding the use of latex in operating rooms. See N.T. 3/15/01, p. 12. Moreover, it was not until 1999 that recommended guidelines regarding latex use were published as a standard of care by AORN.

On cross-examination, plaintiff's counsel attempted to introduce a standardized form from the year 2000 to show that it did not contain a "box" pertaining to use of a latex-free cart, despite Ms. Larson's testimony that the latex policies were promulgated in the year 1999. Counsel for plaintiff inquired of Ms. Larson: "Well, don't you agree that a fundamental basis for the opinion that you're providing today is that assuming the standard of care changed in 1999, the form would be different as well?" Opposing counsel objected and this court sustained the objection. See N.T. 3/15/01, pp. 32-33. Continuing with

that line of questioning, the following exchange occurred by and between plaintiff's counsel and Ms. Larson:

"Q: And the basis for your opinion we have agreed a few times that there's no place on that form to put latex-free cart with a check box next to it because you didn't have to until 1999, got it?

"A: It wasn't recommended until 1999.

"Q: Okay, we're together so far.

"A: Okay.

"Q: In support of that idea that you have and you wrote in your report and you told us all together today, did you ask anybody to see a form to confirm your idea?

"A: You mean a present form at Frankford Hospital today?

"Q: Yes.

"A: No, I did not.

"Q: Wouldn't that be important in confirming your idea that the form had to change in '99?

"A: *No, it's not important because that's how it's done. You revise your record to meet the guidelines.*" N.T. 3/15/01, p. 37. (emphasis added)

At this juncture, counsel for plaintiff attempted once again to introduce the 2000 form. Defendant Frankford objected. This court ruled in pertinent part:

"The Court: Excuse me a second. Well, she's testifying in response to his question it was the basis of her opinion. My question at this point is that if you bring a form in from Frankford Hospital that clearly is dated November 5 of 2000, to me, and I'm open to hearing argument, but to me, it doesn't show she's wrong, it just shows Frankford Hospital still didn't do what she said

they should have done after a certain point in time." N.T. 3/15/01, pp. 39-40.

The form plaintiff sought to introduce was irrelevant with regard to Ms. Larson's testimony regarding the origin and promulgation date of the latex guidelines. Moreover, the irrelevance of the form was further demonstrated by Ms. Burch's testimony that a form from the year 2000 was "not important" because you "revise your record to meet the guidelines." N.T. 3/15/01, p. 37.

Accordingly, this court properly found that a form dated November 5, 2000 would have been irrelevant to the issue of whether guidelines existed in 1997 and that the probative value of introducing the same would have been heavily outweighed by its prejudicial effect.

Lastly, plaintiff asserts that the verdict was against the weight of the evidence and contrary to law. See attachment "A," ¶¶11-12.

Once again, plaintiff's failure to brief or argue these issues for purposes of post-trial motions renders them waived for purposes of appeal. See plaintiff's brief in support of motion for post-trial relief; N.T. 7/24/01, pp. 2-10.

## CONCLUSION

For the reasons set forth herein, the decision of this court should be affirmed.